**UNITED STATES of America,
Appellee,**

v.

**Roubini OMIRLY, Appellant.**

**No. 73–1364.**

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 13, 1973.

Decided Dec 4, 1973.

Widener, Circuit Judge, concurred in result and filed opinion.

David A. Nash, Charlotte, N. C. (C. D. Hogue, Jr., Hogue, Hill & Jones, Wilmington, N. C., on brief), for appellant.

Joseph W. Dean, Asst. U. S. Atty. (Thomas P. McNamara, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and FIELD and WIDENER, Circuit Judges.

FIELD, Circuit Judge:

This appeal involves the criminal prosecution of a middle aged woman who at a singularly inappropriate moment joked about the presence of a bomb. On December 31, 1972, Mrs. Roubini Omirly, a naturalized American citizen of Greek nativity, and a companion had purchased tickets on a Piedmont Airlines flight from Wilmington, North Carolina, to New York City. After checking in at the ticket counter and while in the process of completing recently inaugurated screening procedures under which all carry-on luggage was searched, Mrs. Omirly allegedly remarked, "You won't find my bomb." The security officer testified that upon hearing this he twice asked Mrs. Omirly to repeat herself and each time she responded that she had a bomb. Mrs. Omirly testified that her original remark was, "He (another security guard) already got my bomb." In any event, Mrs. Omirly and her companion were asked to stand aside and later accompanied the assistant airport manager to his office where a consent search revealed no bomb or other weapon. The pair was released once the authorities were convinced that Mrs. Omirly had been joking, but the pilot refused to allow them to board the plane and the price of their tickets was refunded.

On February 5, 1973, a criminal information was filed against Mrs. Omirly alleging a violation of Title 49 U.S.C. § 1472(m)(1), which provided as follows:

"Whoever imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an at-

tempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by subsection (i), (j), (k), or (l) of this section, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

Section (l) to which section (m)(1) refers provides a similar penalty for anyone other than certain law enforcement personnel and other authorized persons who, "while aboard an aircraft being operated by an air carrier in air transportation, has on or about his person a concealed deadly or dangerous weapon, or whoever attempts to board such an aircraft while having on or about his person a concealed deadly or dangerous weapon."

The district court, while noting the conflict in testimony, held that section 1472(m)(1) was violated since Mrs. Omirly's own version of the statement implied that she had entered the departing lounge with a bomb which, if true, would have constituted an attempt to board an aircraft while having on or about her person a concealed deadly or dangerous weapon in violation of section 1472(l).

■ Mrs. Omirly attacks her conviction on several grounds: (1) that the security officer violated her rights under Miranda v. Arizona, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1966); (2) that there was insufficient evidence to support her conviction; and (3) that a bomb is not a "deadly or dangerous weapon" for the purposes of Title 49 U. S.C. §§ 1472(l) and (m)(1). The first two contentions are wholly frivolous. At the time the security officer asked Mrs. Omirly to repeat her remark it is clear that Mrs. Omirly was not in custody and the officer was merely attempting to ascertain what she had said. This plainly was not an interrogation in an inherently coercive environment found to be objectionable in Miranda. That Mrs. Omirly's remark did not specifically mention her readiness to board

the airplane does not render her conviction invalid for insufficient evidence. Mrs. Omirly's presence in the departing lounge and her submission to the procedures required to board the plane provide the context in which her remark is to be judged. In that context, the evidence was sufficient to support the court's verdict.

■ Mrs. Omirly's contention that a bomb is not a "deadly or dangerous weapon" for purposes of Title 49 U.S.C. §§ 1472(l) and (m)(1) involves the interrelation of that statute with Title 18 U.S.C. § 35(a) and requires an examination of the legislative history of the two acts. Simply stated, Mrs. Omirly's theory is that since Title 18 U.S.C. § 35(a) deals specifically with bombs, the later enactment of Title 49 U.S.C. §§§ 1472(l) and (m)(1) must have been directed at other problems. That "concealed deadly or dangerous weapons" was intended to encompass a broad spectrum of weapons is apparent from the House Report accompanying this legislation.

"Consideration was given to attempting to define the term 'deadly or dangerous weapon.' However, this is not practicable. These terms have been used without definition in other provisions of title 18, United States Code, and in many State criminal laws. The courts will determine in each case, as it arises, whether the weapon in question was deadly or dangerous." 2 U. S.Code Cong. & Ad.News p. 2570 (87th Cong., 1st Sess., 1961).

Following the legislative design the courts have held unloaded guns and knives to be "deadly or dangerous weapons." United States v. Ware, 315 F.Supp. 1333 (W.D.Okla.1970); United States v. Margraf, 347 F.Supp. 230 (E.D.Pa.1972). While it is obvious that "deadly or dangerous weapon" was intended to cover more than the "destructive substances" embraced by Title 18 U.S.C. § 35(a), there is nothing in the definition of those terms which suggests that "destructive substances"[1] were to be excluded from

1. 18 U.S.C. § 31 defines "destructive substance" as "any explosive substance, flammable material, infernal machine, or other chemical, mechanical, or radio-active device

the class of weapons described as "deadly or dangerous." The mere fact that Title 49 U.S.C. §§ 1472(*l*) and (m)(1) were enacted subsequent to the original enactment of title 18 U.S.C. § 35 does not support a theory that in the substantive context the two statutes are mutually exclusive.

However, this does not end our analysis of the interrelation between Title 49 U.S.C. § 1472(m)(1) and Title 18 U.S.C. § 35(a). The history of Congressional acts punishing false threats of bombs and other weapons aboard common carriers begins with the 1956 enactment of Title 18 U.S.C. § 35, commonly referred to as the "Bomb Hoax Act," which made it a misdemeanor to willfully and with knowledge of its falsity impart false information of a destructive device in, upon or in proximity to an aircraft. Several courts construed "willfully" to require an element of maliciousness with the result that pranksters frequently were acquitted. In 1961 the Attorney General, noting this development, proposed and the Congress enacted a bifurcated form of Title 18 U.S.C. § 35. The new act provided in subsection (a) that anyone imparting information known to be false regarding the presence of a destructive device in, upon or in proximity to an aircraft would be guilty of a misdemeanor punishable by not more than $1000 or not more than one year in prison, or both. Additionally, the new subsection (b) provided that whoever "willfully and maliciously, or with reckless disregard for the safety of human life," imparts similar false information would be guilty of a felony punishable by not more than $5000, or not more than five years in prison, or both. The sharp contrast in penalties, it was hoped, would make clear that pranksters as well as serious offenders were to be punished.

Also in 1961, Congress enacted Title 49 U.S.C. §§ 1472 (i)–(n), the "anti-hijacking statute," which, inter alia, made it a crime to impart false information that one had or attempted to have on or about his person a concealed deadly or dangerous weapon while aboard or attempting to board an aircraft being operated by an air carrier in air transportation. Conscious of the problems encountered under the original language of Title 18 U.S.C. § 35, the Congress employed the same dual standard of intent to differentiate between misdemeanor and felony offenses in Title 49 U.S.C. §§ (m)(1) and (m)(2) that had been used in the recently amended version of Title 18 U.S.C. §§ 35(a) and (b). 2 U.S.Code Cong. & Ad.News p. 2576 (87th Cong., 1st Sess., 1961).

In 1965 Congress amended Title 18 U.S.C. § 35(a) by removing its misdemeanor classification and substituting in its place a civil proceeding with a maximum fine of $1000. This amendment is susceptible of conflicting interpretations: (1) that it vested in the prosecutor the discretion of prosecuting non-felonious bomb hoaxes under the misdemeanor provisions of Title 49 U.S.C. § 1472(m)(1) or under the civil provisions of Title 18 U.S.C. § 35(a); or (2) that it amended by implication Title 49 U.S.C. § 1472(m)(1) by removing from that section's criminal provisions behavior which falls within the civil provisions of Title 18 U.S.C. § 35(a).

In United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939), the Supreme Court gave this classic statement of the rule regarding amendment by implication:

"It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible. * * * (citations omitted) The intention of the legislature to repeal 'must be clear and manifest.' * * * (citation omitted) It is not sufficient * * * (citation omitted) 'to estab-

or matter of a combustible, contaminative, corrosive, or explosive nature." Also relevant is the definition of "firearm" in the

Gun Control Act of 1968, 18 U.S.C. § 921(a)(3)(D), as "any destructive device."

lish that subsequent laws cover some or even all of the cases provided for by [the prior act]; for they may be merely affirmative, or cumulative, or auxiliary.' There must be 'a positive repugnancy between the provisions of the new law, and those of the old; and even then the old law is repealed by implication only, *pro tanto*, to the extent of the repugnancy.'"

Having established that at least facially Title 49 U.S.C. § 1472(m)(1) and Title 18 U.S.C. § 35(a) both cover bomb hoaxes, it remains to be determined whether the different penalties for the same act are "positively repugnant."

An examination of the legislative history of the 1965 amendment of Title 18 U.S.C. § 35(a) reveals that the purpose of the act was to reduce the penalty for non-felonious bomb hoaxes. The Senate Report relates that the Justice Department was still having "difficulty in obtaining misdemeanor convictions against persons of good reputation and standing in their communities whose offense consists more of bad judgment than of intentional antisocial behavior, because juries are reluctant to stigmatize such persons as criminals." 1 U.S.Code Cong. & Ad.News p. 1834 (89th Cong., 1st Sess. 1965). Examples of behavior which the Justice Department had been unable to prosecute successfully included the following:

"1. A college graduate employed as a stockbroker with a large firm, who had a few drinks prior to making the statement, allegedly said to the stewardess en route: 'I have my bomb here.' He was found not guilty by the court. (Calif., N.D., Sept. 21, 1963).

2. A medical technician with a Ph. D., when asked by a ticket agent concerning the contents of his briefcase, replied that he was carrying an atomic bomb in it. Authority to dismiss the information was granted to the U. S. attorney by the Department of Justice.

3. A graduate of a large east coast college and the executive vice president of a corporation, when requested by the stewardess to remove a carton from the overhead rack of the plane prior to takeoff replied, 'Certainly, it's just a little old bomb.' The grand jury returned a no true bill." *Id.* at p. 1835.

The Justice Department expressed its belief, in which the Congress concurred, that "a civil penalty will be equally appropriate and more effective, that jokesters will be more likely to be punished, and that their punishment will serve to deter others." *Id.*

While we are mindful of the rule that amendment by implication is not favored, we think it is clear that such an amendment occurred in this case. The acquiesence by the Justice Department and the Congress in what they found to be the prevailing social view of relatively innocent bomb hoaxes contradicts any notion that the various district attorneys were to be given the discretion to make non-felonious bomb hoaxes criminal matters. Unquestionably, Title 49 U.S.C. § 1472(m)(1) and Title 18 U.S. C. § 35(a) are repugnant in their provisions for criminal procedures and possible incarceration on the one hand as against a civil proceeding with a maximum penalty of $1000 on the other. To reach some reasonable degree of accommodation between the two statutes and to effectuate what we perceive to have been the plain legislative intent, we conclude that the 1965 amendment of Title 18 U.S.C. § 35(a) removed non-malicious bomb hoaxes from the scope of Title 49 U.S.C. § 1472(m)(1) and requires that such offenses be handled exclusively under the civil procedure delineated in Title 18 U.S.C. § 35(a). We in no way intimate that Title 49 U.S.C. § 1472(m)(1) has lost its vitality with respect to any other activity falling within its scope.

Mrs. Omirly's conviction is reversed and the case remanded with the instruction that the district court dismiss the criminal proceeding against her.

Reversed and remanded.

**358**

WIDENER, Circuit Judge (concurring specially):

I concur in the result.

We have a broad statute, 49 U.S.C. § 1472, which makes criminal with misdemeanor punishment the nonmalicious giving of false information in certain instances concerning a "deadly or dangerous weapon;" and a narrow statute, 18 U.S.C. § 35 (the amendment with which we are concerned being the last enacted), which provides a civil penalty in the same certain instances for giving the same information concerning "destructive substances."

We have properly held that a bomb, admittedly a "destructive substance" under 18 U.S.C. § 35, is also a "deadly or dangerous weapon." But bombs are not the only deadly or dangerous weapons, so the broad statute should include the narrow as the general includes the specific.

While noting that either under the opinion of the court or my concurrence, Mrs. Omirly may yet be proceeded against civilly, I would arrive at the majority result by applying the principle stated in Townsend v. Little, 109 U.S. 504, 3 S.Ct. 357, 27 L.Ed. 1012 (1883):

> "According to the well-settled rule, . . . general and specific provisions, in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general. . . ." 109 U.S. 504, 512, 3 S.Ct. 357, 362, 27 L.Ed. 1012.

Since "[s]pecific terms prevail over the general in the same or another statute which otherwise might be controlling," Ginsberg & Sons v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932), and since the two statutes "may subsist together," *Townsend*, supra at 512 of 109 U.S., 3 S.Ct. 357, I would hold that the civil penalty provision of 18 U.S.C. § 35 applies to Mrs. Omirly's act, with no inference of repeal by implication.