**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Spencer IRVING, Jr., Defendant-Appellant.**

**No. 74–1722.**

United States Court of Appeals, Fifth Circuit.

March 20, 1975.

Rehearing and Rehearing En Banc Denied June 11, 1975.

Joseph R. Bankoff, Atlanta, Ga. (Court-appointed), for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., Sherman D. Johnson, Dorothy T. Beasley, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before DYER, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Appellant, Spencer Irving, Jr., was charged in a single count information with imparting false information concerning an alleged attempt to be made to commit air piracy, in violation of Title 49, U.S.C., Sec. 1472(m)(1).[1] The district

---

1. The indictment charged:

That, on or about October 19, 1972, in the Northern District of Georgia, SPENCER IRVING, JR. did unlawfully impart, convey and cause to be imparted and conveyed false information, knowing said information to be false, concerning an alleged attempt to be made to do an act which would be a crime prohibited by Subsection (i) of Title 49, U.S.Code, Section 1472, to wit: aircraft piracy; by then and there conveying such false information to Denise Lacouture, a stewardess serving aboard Eastern Air Lines Flight No. 676, scheduled to fly in air commerce from Atlanta, Georgia to Raleigh-Durham, North Carolina; in violation of Section 1472(m)(1), Title 49, U.S.Code.

Title 49, U.S.C., Sec. 1472(m)(1) provides:

Whoever imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by subsection (i) . . . of this section, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

judge denied Irving's motion to dismiss for failure to state an offense against the United States, upheld the statute against constitutional attack, and following a bench trial found and adjudged Irving guilty as charged. The court imposed a twelve month confinement sentence, which was suspended, with twelve months' supervised probation. This appeal timely followed. We affirm.

Appellant's conviction rests upon his statement to an airline stewardess in the cockpit of a commercial airplane minutes before its takeoff on a regularly scheduled flight that he was studying to be a travel agent, and that when he had studied sufficiently and knew enough about airplanes, he was going to hijack one.[2] Minutes earlier, he had made similar remarks to the Second Officer on board, who warned him never to repeat what he had said. He was removed from the plane and, under questioning by an FBI agent, protested that he had only been joking.

Irving challenges his conviction on three grounds: (1) his speech was without the scope of Sec. 1472(m)(1); if covered by the statute, (2) then the statute is overbroad, conflicting with the First Amendment guaranty of free speech; and (3) vague, in violation of the Fifth Amendment due process clause.

The first argument advanced is that appellant's language did not fall within the prohibition of Sec. 1472(m)(1) because it concerned an alleged attempt to be made in the indefinite future. The statute, Irving argues, applies only to false information concerning immediate attempts or ones which allegedly will occur at a definite point in time.

The critical language of the statute prohibits the conveying of false information, with knowledge of its falsity, "concerning an attempt or alleged attempt . . . to be made" to commit air piracy. Appellant's speech, as his counsel conceded at oral argument, falls within the literal wording of the statute. In urging a construction limited to the conveying of false information concerning an immediate peril, however, he misconceives the scope of the problem which Congress addressed.

Beginning in the 1950's many anonymous phone calls threatening the destruction of airplanes were made to airline and airport officials in the United States, resulting in the grounding or delay of scheduled flights and panic in the public. See 1956 U.S. Code Congressional and Administrative News, pp. 3145–3146. In the 1960's the fad changed slightly and many of the phone calls conveyed threats of hijacking. See 1961 U.S.Code Congressional and Administrative News, p. 2563 at 2575–2576. Most of the warnings were false and were made by persons evincing a badly distorted sense of humor. Congress responded each time with a statute making such conduct criminal. See Title 18, U.S.C., Sec. 35, the bomb hoax statute; Title 49, U.S.C., Sec. 1472(m).[3] The hi-

Title 49, U.S.C., Sec. 1472(i) refers to "aircraft piracy," defined as "any seizure or exercise of control, by force or violence or threat of force or violence and with wrongful intent, of an aircraft in flight in air commerce." Title 49, U.S.C., Sec. 1472(i)(2).

**2.** Irving told the FBI agent that he said he was studying to be a hijacker. The district judge opined that this statement alone was insufficient to support a conviction for violation of Sec. 1472(m)(1).

**3.** Because of the difficulty in obtaining convictions under Title 18, U.S.C., Sec. 35 in instances where the defendant was merely joking, Congress divided the offense into two categories: a misdemeanor for individuals who were only trying to be funny; and a felony for individuals with more sinister motives. See 1961 U.S. Code Congressional and Administrative News, pp. 3052–3053; Title 18, U.S.C., Sec. 35, as amended Oct. 3, 1961. But even after this change, convictions were difficult to obtain, and the statute was again amended to decriminalize the joking bomb hoax and to substitute a civil penalty. See 1965 U.S.Code Congressional and Administrative News, p. 1834; Title 18, U.S.C., Sec. 35, as amended July 7, 1965. Congress did not choose to decriminalize the conveying of false information concerning a hijack, however, and satisfied itself with imposing a more serious punishment where the false information is imparted "willfully and maliciously, or with reckless disregard for the safety of human life". Title 49, U.S.C., Sec. 1472(m)(1) and (m)(2).

jack statute is modeled after the bomb hoax statute. See 1961 U.S. Code Congressional and Administrative News, p. 2563. Because both statutes address similar problems we look to the legislative history and case law interpreting each as a guide for disposition of the present appeal.

The legislative history makes clear that Congress was concerned with the prankster as well as with the individual acting out of malice, and has decreed that the conveyance of such false information is no joking matter. See 1956 U.S.Code Congressional and Administrative News, p. 3145; 1961 U.S.Code Congressional and Administrative News, p. 3052; 1965 U.S.Code Congressional and Administrative News, p. 1834. Our study of this legislative history indicates that the concern of Congress was not solely with preventing the actual destruction or hijacking of airplanes, but also with the disruption of air service and jeopardy to the safety of passengers and personnel which results when false information about potential bombs or hijacks is relayed. The Congress' power to legislate to prevent such disruption and jeopardy to safety is not open to serious doubt, but when speech is restricted the statute must be construed with the dictates of the First Amendment firmly in mind and measured against its commands. See Watts v. United States, 1969, 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664, 667; Dennis v. United States, 1951, 341 U.S. 494, 501–503, 71 S.Ct. 857, 863–64, 95 L.Ed. 1137, 1148–49.

When we focus our attention on the evils Congress was trying to prevent—unnecessary interference with air commerce, with serious potential for disruption and jeopardy to the safety of the travelling public and crew personnel—we must reject the construction urged by the appellant. When an alleged attempt is supposedly going to occur is not a sufficiently accurate gauge of those evils. An indication of a future attempt may be equally or more disruptive as occasions when the particular flight number, day, time, and location is designated. Conveying false information of an attempt to be made relates, not to the immediacy of an attempt, but rather to whether an attempt is to occur at all. Again, it is not the immediacy of the threat of a hijack which must be looked to in determining whether a defendant has violated the statute, but the immediacy of the threat of disruption.

We therefore construe § 1472(m)(1) as prohibiting the conveying of false information, knowing it to be false of an attempt to be made where there is a real and immediate threat of disruption to present or future air service, with its attendant dangers for the safety of passengers and personnel, whether or not the speaker intends to disrupt, whether or not he knows disruption will result, and whether or not disruption actually does ensue.

Appellant's speech therefore falls within the scope of the statute, as construed. A cockpit of an airplane, minutes before take-off, is not an appropriate forum in which to announce one's intent someday to hijack an airplane. As the stewardess testified at trial, such statements as appellant made are always dealt with as serious matters because of the airline's responsibility for the safety of the many persons aboard. She could not let the statement pass without determining whether or not Irving presented a real threat. Disruption, in the form of delay for removal and questioning, followed as a matter of course.

Appellant nevertheless contends that the statute is overbroad because it prohibits the conveyance of all false information concerning an attempt to commit an unlawful act without regard to the time or place that such information is conveyed, to whom it is conveyed, or whether the false information in fact hinders or threatens to hinder air commerce.

Unlike the situation where a federal court confronts a state statute and is unable to impose a limiting construction which would save the statute from an attack on its constitutionality, see Good-

ing v. Wilson, 1972, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408, we confront a federal statute and are, accordingly, duty-bound to interpret it "in a manner not inconsistent with the demands of the Constitution". Dennis v. United States, 1951, 341 U.S. 494, 501–502, 71 S.Ct. 857, 863, 95 L.Ed. 1148. The limiting construction we have imposed obviates any overbreadth difficulties and is consistent with the results reached in prior cases. Time and place are important insofar as they affect the determination whether the false information presents a clear and present danger of interference with air commerce and safety. For example, in United States v. Silver, E.D.Pa.1961, 196 F.Supp. 677, the defendant told a ticket agent he had a bomb in his briefcase. Predictably, the agent alerted airport guards and the FBI. The plane was delayed twenty minutes. The Court took "judicial notice of similar situations elsewhere where individuals of a completely distorted sense of humor or pranksters with juvenile minds have caused expensive delays, investigations, hardships and induced fear by such acts." 196 F.Supp. at 679. See United States v. Omirly, 4 Cir. 1973, 488 F.2d 353, where the Fourth Circuit affirmed the conviction of a woman who remarked, "You won't find my bomb" as her luggage was being searched.

■ Similarly, the individual to whom the false information is conveyed is important only insofar as it affects a finding whether the information poses a clear and present danger of interference with air commerce and safety. That the individual is not an airline official or a law enforcement officer is not determinative. Disruption can ensue when third parties are informed, or misinformed, such as members of the news media or simply members of the general public. For example, in Taylor v. United States, S.D.Fla.1973, 358 F.Supp. 384, the defendant and a companion approached several persons entering the terminal and defendant asked, "Is this the plane that we are going to hijack?" 358 F.Supp. at 385. That the statement was made to third persons generally and not to airport personnel is not determinative of whether this and similar statements pose a clear and present danger to air commerce and safety in situations where it is reasonably foreseeable that such third persons will relay the information to those under a duty to investigate.

Nor is the fact that the false information does not actually hinder air commerce relevant. A defendant cannot rely on the fortuitous circumstance that the evil Congress sought to prevent does not actually ensue. Thus, the Second Circuit, in United States v. Allen, 2 Cir. 1963, 317 F.2d 777, affirmed the conviction of a man who, while at the ticket counter, asked of a friend, "Is that the bag with the bomb in it?". Although no actual interruption of any scheduled flight occurred, because an investigation was conducted long before the arrival of the plane defendant was booked for, the Court was unwilling to find "that prohibition of all such false reports to protect the traffic from interruption was an excessive exercise of Congressional power." Id.[4]

■ We have little difficulty in finding that the statute as construed is not overbroad and hence not unconstitutional on First Amendment grounds. It is aimed at a specific evil and is drawn to effectuate the legislative judgment that such speech must be suppressed. See Cantwell v. Connecticut, 1940, 310 U.S. 296, 307–308, 311, 60 S.Ct. 900, 905, 906, 84 L.Ed. 1213, 1220, 1221. The evil sought to be suppressed by Congress is of such gravity and the restriction on speech so slight as not to constitute an undue infringement upon protected expression. Mr. Justice Holmes' classic example of the false shout of fire in a theatre, Schenck v. United States, 1919, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63

---

4. Support for our position may be found in Watts v. United States, 1969, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664, holding constitutional on its face Title 18, U.S.C., Sec. 871, a statute which prohibits the making of threats on the life of the President of the United States, even though Sec. 871, like the statute before us, fails to describe those to whom the threat must be conveyed, or to limit when or where the threat must occur.

L.Ed. 470, 473, differs widely from speech which challenges widely held and deeply cherished beliefs, though both may cause serious disruption. The leeway Congress may constitutionally exercise in regulating the former necessarily exceeds considerably the leeway it possesses in regulating the latter.[5] The present situation closely approximates the false cry of fire, and Congress was within its powers in choosing to make such speech criminal.

Appellant's final argument is that the statute is unconstitutionally vague, in violation of the due process clause of the Fifth Amendment. The district judge expressed the view that had defendant limited his remark to simply stating that "I'm studying to be a hijacker", he would not have found him guilty, but that Irving's statement, "I'm studying to be a travel agent and *one of these days I'm going to hijack an airplane*" constituted a statutory violation. This prompts Irving to urge that reasonable men necessarily experience difficulty in determining what conduct is proscribed by the statute and what is constitutionally protected. See United States v. Petrillo, 1947, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877.

"It is a basic principle 'of due process that an enactment is void for vagueness if its prohibitions are not clearly defined". Grayned v. City of Rockford, 1972, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227. Laws must give fair warning of what is proscribed, provide standards to see that they are not arbitrarily and discriminatorily applied, and be explicit enough to avoid a chilling effect. 408 U.S. at 108–109, 92

S.Ct. at 2298–99, 33 L.Ed.2d at 227–28. However, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." 408 U.S. at 110, 92 S.Ct. at 2300, 33 L.Ed.2d at 228–29 (footnote omitted).

We do not find the statute as construed to be unconstitutionally vague. The conduct/speech which is prohibited is reasonably clear. We are not dealing here with a statute which is aimed at punishing "the expression of an unpopular point of view, and it contains no broad invitation to subjective or discriminatory enforcement." 408 U.S. at 113, 92 S.Ct. at 2302, 33 L.Ed.2d at 230. Appellant's first statement did not concern an "attempt to be made," as his second statement did. This sufficiently distinguished between them, as the trial judge determined.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En banc is denied.

The statement at page 1328 of 509 F.2d "appellant's speech, *as his counsel conceded at oral argument,* falls within the literal wording of the statute" is amended by withdrawing and deleting the italicized language. In all other respects the opinion is adhered to.

---

5. See the dissenting opinion of Judge J. Skelly Wright in Watts v. United States, 1968, 131 U.S.App.D.C. 125, 402 F.2d 676 at 690, rev'd 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664:

Of course, all spoken threats do not constitute protected speech. Utterances which "are no essential part of any exposition of ideas" or which are "not in any proper sense communication of information or opinion" are not within the purview of the First Amendment. Chaplinsky v. State of New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); Cantwell v. State of Connecticut, 310 U.S. 296, 310, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Thus

threats are properly punished every day under statutes prohibiting extortion, blackmail and assault without consideration of First Amendment issues.

On the other hand, where an utterance does convey an idea, particularly an idea about how public affairs should be conducted, the label "threat" does not preclude First Amendment protection any more than do the labels "obscenity", Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), or "libel," New York Times Co. v. Sullivan, *supra* [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686].