**Bradford SWENSON and George Lagarde**

v.

**CULBERSON COUNTY, et al.**

No. P–94–CA–35.

United States District Court,
W.D. Texas,
Pecos Division.

April 23, 1996.

Antonio Rodriguez, Farr, Texas, and David Horton, Dallas, Texas, for Plaintiffs.

Keith Stretcher, Midland, Texas, and Denis Dennis, Odessa, Texas, for Defendants.

### NUNC PRO TUNC ORDER ON MOTIONS FOR SUMMARY JUDGMENT BY OFFICERS STEVE LAUDERDALE, FRANK DIESHLER, AND BRUCE WILLIAMS

BUNTON, Senior District Judge.

**BEFORE THE COURT** is a motion to dismiss[1] filed by Officers Lauderdale and Dieshler, and a motion for summary judgment filed by Officer Williams. Also on file with the Court are the Plaintiffs' responses to Defendants' motions which have also been reviewed by the Court.

■ Plaintiffs Bradford Swenson and George Lagarde filed this lawsuit pursuant to Title 42 U.S.C. § 1983 alleging that their civil rights were violated by Defendants Steve Lauderdale, Frank Dieshler and Bruce Williams. All three Officers are being sued in their official and individual capacities, and are therefore claiming the defense of qualified immunity. Because qualified immunity is "an immunity from suit rather than a mere defense to liability," any claims to the immunity are to be resolved at the earliest possible stage in the litigation before any other action is taken by the District Court. *Lampkin v. City of Nacogdoches,* 7 F.3d 430, 436 (5th Cir.1993); *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

After due consideration of the facts, pleadings, and applicable law, this Court is of the opinion the affirmative defense of qualified immunity should be upheld and that the three Officers named above should be dismissed from this cause of action for the reasons discussed below.

### I. Factual Background

On November 10, 1993, City of Midland Police Officer Bruce Williams was in Culberson County, Texas, approximately three miles south of Van Horn on Highway 90 training and certifying Culberson County Deputy Sheriff Steve Lauderdale on the use of moving radar. The Officers were in a fully marked Culberson County Sheriff's ve-

---

1. Although Defendants Lauderdale and Dieshler move for dismissal pursuant to Fed.R.Civ.P. 12, this Court shall follow the mandate set out by Rule 12(b)(6) and consider such motion as one for summary judgment pursuant to Fed.R.Civ.P. 56.

hicle and were both in full uniform. At approximately 4:15 p.m., Officer Lauderdale clocked with his radar a truck traveling 67 miles per hour in a 55 miles per hour speed zone on Highway 90. Officer Lauderdale turned on his overhead lights and pursued the truck until it stopped on the side of the highway. While approaching the truck, Officers Lauderdale and Williams noticed it had a handmade license plate which read:

```
      ☺ CITIZEN OF TEXAS  ☺
IN EXERCISE OF RIGHTS TO TRAVEL
U.S.const.art.4&amend.4,14

B.L. SWENSON
P.O. BOX 175, Presidio Texas   79845
tax,reg.,&lic.const.immune
```

Officer Lauderdale informed Plaintiff Swenson that he was stopped for exceeding the speed limit and asked to see his driver's license and proof of liability insurance. Swenson informed Officer Lauderdale he had no driver's license, liability insurance, vehicle registration, and furthermore that his speedometer did not work. Officer Lauderdale further observed that Swenson was not wearing a seat belt. Officer Lauderdale told Swenson to wait while he proceeded back to his vehicle to obtain a citation book. As Officer Lauderdale was walking back to his vehicle, Swenson put his vehicle in drive and began pulling away from the two Officers. Officer Williams yelled for them to stop. Swenson stopped the vehicle and Officer Lauderdale told Swenson to exit the vehicle. Swenson refused to exit. Officer Lauderdale asked, and Swenson refused numerous requests to exit the vehicle voluntarily. Officers Lauderdale and Williams proceeded to forcibly remove Swenson from the vehicle. Swenson refused to cooperate and attempted physical assault on the Officers at which point Officer Williams took Swenson down to the ground on his stomach and placed handcuffs on him. Likewise, Plaintiff Lagarde refused numerous requests to exit the vehicle and responded that he wanted to see an arrest warrant. Officers Lauderdale and Williams removed him from the vehicle and placed him under arrest. Lagarde alleges that while he was being forcibly placed in the rear of the police vehicle, one of the Defendants closed the door on Lagarde's head resulting in "substantial injuries." At some point during this interchange Officer Dieshler arrived on the scene to assist the other Officers. Dieshler is likewise being sued by Plaintiffs.

Ultimately, Swenson was charged with failure to have a driver's license in violation of TEX.REV.CIV.STAT.ANN. art. 6687b, failure to maintain financial responsibility in violation of TEX.REV.CIV.STAT.ANN. art. 6701h, operating an unregistered vehicle by having a fictitious number plate in violation of TEX.REV. CIV.STAT.ANN. art. 6675b–7, disobeying a police officer in violation of TEX.REV.CIV.STAT. ANN. art. 6701d, speeding and failure to wear a seat belt in violation of TEX.REV.CIV.STAT. ANN. art. 6701d, and resisting arrest in violation of TEX.PENAL CODE ANN. § 38.03. Lagarde was also charged with disobeying a police officer and resisting arrest. Both

Plaintiffs were given a hearing a short time later by the Justice of the Peace and entered guilty pleas. Although the status of the adjudication of the charges is not entirely clear from the summary judgment evidence, it appears both Plaintiffs were given a hearing before a Justice of the Peace and it does not appear that any resulting convictions have been overturned or expunged.

## II. Qualified Immunity

■ Once a prima facie case under Section 1983 is established, the question becomes whether a defendant is entitled to some kind of defense against or immunity from damages liability. Although Section 1983 on its face makes no provision for defenses or immunities, beginning in the late 1960s, the United States Supreme Court, relying on the background of tort liability and on policy considerations, conferred a qualified immunity defense to police officers. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This qualified immunity defense reflects a balance between the interest in preventing, and compensating for, constitutional violations and the interest in avoiding the overdeterrence of independent decision making by government officials. SHELDON H. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION 451 (2d ed. 1986).

■ Local law enforcement officers who are sued for constitutional violations are entitled to immunity from suit if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court clarified the *Harlow* qualified immunity standard in *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The *Anderson* Court explained that the general right of due process of law is quite clearly established by the due process clause, but that not every alleged violation of the due process clause violates a known constitutional right. "The right the individual is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear

that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. The Court must look to the facts with which the officer acted and question whether the unlawfulness of the officer's act was apparent. Unless the unlawfulness of the officer's act was so apparent that no reasonable officer in Defendants' position could have believed in the lawfulness of those actions at the time, the qualified immunity doctrine protects the official from suit. The burden is on the Plaintiffs to plead specific facts showing violation of clearly established law by the Defendants, or the complaint is subject to dismissal. *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984); *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994); *Bennett v. City of Grand Prairie,* 883 F.2d 400, 408 (5th Cir.1989); *Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985) (Plaintiffs must "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.").

### a. Federal Law Claims

Although Plaintiffs' Counsel have filed three amended complaints since the inception of this suit, it is nonetheless arduous to comprehend the federal and state claims being asserted in the most recent Fourth Amended Complaint. Plaintiffs claim that "Defendants in bad faith and with malice filed meritless charges and [sic] 'resisting arrest' against Plaintiffs." *Fourth Amended Complaint,* at 7, ¶ 26 (filed April 10, 1996). Plaintiffs further claim Defendants' conduct was "under color of state law and in violation of Plaintiffs' [constitutional] rights ... [and] is actionable under 42 U.S.C. § 1983" *Id.* at ¶ 27. Plaintiffs also claim "Defendants' conduct has denied Plaintiffs' Rights to Due Process and ... of their liberty and property." *Id.* at ¶ 28. This Court construes all three claims above to be one in the same, that is, the Plaintiffs' claim the Officers violated their due process rights both during the arrest and afterward by filing "meritless" charges against them.

### 1. Unlawful Arrest

An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983. *Duckett v. City of Cedar Park,* 950 F.2d 272, 278 (5th Cir.1992). An arrest or detention may be unlawful if it is accomplished without due process of law as required by the constitution. *Baker v. McCollan,* 443 U.S. 137, 144–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979). Police officers are, therefore, required under the Fourth Amendment to make a determination of probable cause before any significant pretrial restraint of liberty. *Martin v. Thomas,* 973 F.2d 449, 453 (5th Cir.1992). A police officer has probable cause to arrest if, at the time of the arrest, he or she had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. *Gladden v. Roach,* 864 F.2d 1196, 1199 (5th Cir.), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989).

In a valid traffic stop an officer may request the driver to exit the vehicle and request a driver's license, proof of liability insurance, vehicle registration, and run a computer check on any one or all of the above. *Pennsylvania v. Mimms,* 434 U.S. 106, 108–11, 98 S.Ct. 330, 332–33, 54 L.Ed.2d 331 (1977); *Macias v. Raul A. (Unknown), Badge No. 153,* 23 F.3d 94, 98 (5th Cir.1994). Here, Swenson was clocked driving his truck 67 miles per hour in a 55 miles per hour zone, making the initial stop lawful. Although a vehicle that is speeding may be lawfully stopped and given a citation, the driver may not be taken into custody solely for the offense of speeding. *Dillard v. Texas,* 550 S.W.2d 45, 50 (Tex.Crim.App.1977); *Nite v. Texas,* 882 S.W.2d 587, 591–92 (Tex. App.—Houston [1st Dist.] 1994, no writ). The uncontroverted summary judgment evidence in this case shows that at the time of arrest, Swenson was driving an unregistered vehicle without a driver's license or proof of liability insurance, and that both Swenson and Lagarde disobeyed the orders of the Officers and resisted arrest.[2] Therefore, both Officers Lauderdale and Williams had the requisite knowledge that Plaintiffs had committed or were committing a number of acts which are criminal in the State of Texas.

It is the opinion of this Court that the aggregate number of traffic violations after the initial stop warranted sufficient probable cause to arrest Plaintiffs, and yet Plaintiffs' due process rights remained at all times inviolate. Therefore, Plaintiffs' claim of unlawful arrest pursuant to Section 1983 must fail and Officers Lauderdale, Dieshler, and Williams are entitled to qualified immunity with regard to such claim.

### 2. Excessive Force

Plaintiff does not specifically mention in the Fourth Amended Complaint a claim for excessive force pursuant to Section 1983 and under normal circumstances waives any such claim for consideration. Nevertheless, construing the amended complaint as liberally as possible, the Court will analyze the requirements for a showing of excessive force. In order to prevail on an excessive force claim, Plaintiffs must show: 1) a significant injury, 2) which resulted directly and only from the use of force that was clearly excessive to the need; and excessiveness of which was 3) objectively unreasonable. *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989). The Supreme Court in *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), held that a prisoner in an Eighth Amendment case need not demonstrate significant injury where the force used was malicious and wanton. *Id.* at 4–12, 112 S.Ct. at 998–1002. The *Hudson* decision paved the way for the Fifth Circuit opinion in *Harper v. Harris County,* extending the rul-

---

2. Any one of these offenses by themselves are grounds under Texas law for a lawful arrest. *See Vela v. Texas,* 871 S.W.2d 815, 819 (Tex.App.—Houston [14th Dist.] 1994, no writ) (fictitious license plate); *Id.* at 818–19 (failure to produce liability insurance); *Kennedy v. Texas,* 847 S.W.2d 635, 636–37 (Tex.App.—Tyler 1993, no writ) (failure to produce driver's license); *Snyder v. Texas,* 629 S.W.2d 930, 934 (Tex.Crim.App. 1982) (operating vehicle without inspection sticker); *Gassner v. City of Garland,* 864 F.2d 394, 398–400 (5th Cir.1989) (disobeying lawful orders and directions from a police officer).

ing to Fourth Amendment cases, such as the one before the Court today. 21 F.3d 597, 600 (5th Cir.1994). However, the objective reasonableness of a police officer's conduct is measured with reference to the law as it existed at the time of the conduct in question. *King v. Chide,* 974 F.2d 653, 657 (5th Cir. 1992). Whether the conduct which Plaintiffs complain of violated clearly established law is essentially a legal question. *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990). At the time of this incident significant injury was still required under *Morel,* and thus any claim by Plaintiffs Swenson and Lagarde must be analyzed pursuant to such standard.

▬ The extent of the injuries sustained by both Swenson and Lagarde were minor abrasions normally associated with a recalcitrant suspect. According to the summary judgment evidence presented, the medical records of both Plaintiffs show that they neither received medical treatment, nor sought any medical treatment once they were released from Culberson County Jail. In a particular salient portion of Lagarde's deposition he states:

A: He [sheriff] asked me if I wanted to go to the hospital. And being a paramedic, I figured my injuries didn't require hospitalization. He took me to the bathroom so I could wash up some of my injuries. [He] [g]ave me some Band–Aids and I put them on.

. . . . .

Q: And they offered to take you to the hospital and you declined?

A: Yes, sir.

. . . . .

Q: Did you ever seek any other medical treatment other than what you did—

A: No, sir.

Q: —that day at the jail? And did you recover?

A: Yes, sir.

*Lagarde Deposition,* at 65–66 (taken Sept. 25, 1995). Likewise, in Swenson's deposition he did not have any significant injuries while in County Jail and admits that he does not have any of the same injuries to this day:

Q: What type of pains were you having?

A: When I breathed.

Q: Like in your—

A: To inhale—at the time I described it as my area in here called the diaphragm that it hurt.

Q: Did it eventually go away?

A: Yes.

Q: Did you specifically request some type of treatment for that pain?

A: I asked if they could do anything for me and they said they couldn't as long as the pain wasn't real bad and I wasn't hemorrhaging.

Q: Well, was the pain real bad or were you hemorrhaging?

A: It wasn't excruciating pain. It was just a very noticeable pain every time I breathed.

Q: And did it gradually get better?

A: Yes.

Q: Do you have any problems today?

A: I don't—I don't know if it has anything to do with it, but I get a crick in my neck since that time.

Q: You don't have any problems with the pain you felt in you chest?

A: No. No.

*Swenson Deposition,* at 64–65 (taken Sept. 25, 1995).

The Plaintiffs have totally failed to show any significant injury. The injuries Plaintiffs did suffer were de minimis, non-actionable, and were a direct result of Plaintiffs' resistance to exiting the vehicle and Plaintiffs resistance to being placed under arrest. Such injuries do not rise to the level of a constitutional violation under the Fourth Amendment. Therefore, Plaintiffs' excessive force claim must fail and Officers Lauderdale, Dieshler, and Williams are entitled to qualified immunity with regard to such claim.

### 3. Malicious Prosecution

▬ In order for Plaintiffs to prevail on their claim of malicious prosecution, Plaintiffs must couch such a claim in terms of the

Fourth Amendment which governs in a Section 1983 analysis. *Johnson v. Louisiana Dept. of Agriculture*, 18 F.3d 318, 320 (5th Cir.1994). Moreover, malicious prosecution claims under Section 1983 are considered under the Fourth Amendment's "reasonableness" standard. *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir.1994).

The elements of malicious prosecution are:

1) a criminal proceeding commenced against the plaintiff;

2) the prosecution was caused by the defendant or with his aid;

3) the proceeding terminated in plaintiff's favor;

4) the plaintiff was innocent;

5) the defendant acted without probable cause;

6) the defendant acted with malice; and

7) the criminal proceeding damaged plaintiff.

*Pete v. Metcalfe*, 8 F.3d 214, 219 (5th Cir. 1993). The first two elements advance Plaintiffs case; however, the third and fourth elements do not advance their case. The evidence shows that Plaintiffs have pled guilty to the misdemeanor charges before the Justice of the Peace. Further, Plaintiffs have testified in their depositions that they pled guilty to the misdemeanor charges. In fact, Swenson spent approximately two weeks in jail in order to gain the $50.00 a day credit for the $900.00 fine he was assessed. *Swenson Deposition*, at 44 (taken Sept. 25, 1995).

Next, Plaintiffs fail to prove the fifth element, that Defendants acted without probable cause. According to the analysis in part II(a)(1) above, this Court concludes there was sufficient probable cause. As for the sixth element, based on the pleadings thus far there is insufficient evidence in the record to either confirm or deny this element. Lastly, Plaintiff has shown absolutely no evidence that the seventh element, damage to plaintiff due to the criminal proceeding, has indeed occurred and therefore such element fails to be proven.

Based upon the conjunctive structure of the seven elements of malicious prosecution,

Plaintiffs must prove each and every element to prevail. Swenson and Lagarde have failed to prove all seven and therefore this Court finds that Officers Lauderdale, Dieshler, and Williams are entitled to qualified immunity with regard to such claim.

**b. State Law Claims**

Plaintiffs allege two state law claims consisting of intentional infliction of emotional distress and violation of the Texas Tort Claims Act.

### 1. Intentional Infliction of Emotional Distress

■ Under Texas law, the elements of intentional infliction of emotional distress are:

1) the defendant acted intentionally or recklessly;

2) the conduct was extreme and outrageous;

3) the actions of the defendant cause the complainant emotional distress; and

4) the emotional distress was severe.

*Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Liability for outrageous conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.; Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir.1991).

■ It is the opinion of the Court that the facts alleged by the Plaintiffs against the three Officers simply describe a scuffle that occurred while the Plaintiffs were resisting a lawful arrest and do not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. In the case of Officer Dieshler there is not one scintilla of evidence to show that he even was present during the arrest, much less that he took part in restraining and arresting Plaintiffs Swenson and Lagarde.

### 2. Texas Tort Claims Act

■ Plaintiff Lagarde next argues that while being placed in the rear of the

police vehicle, "[o]ne os [sic] the Defendant Peace Officers told Plaintiff [Lagarde] to move his head before Defendant closed the door, but then such Defendant added that he did not care if the 'f____' door hit Plaintiff's head, closing the door of the county-owned patrol car, and, in fact, hitting Plaintiff's head with the patrol car door." *Fourth Amended Complaint*, at 6, ¶ 22. The statute which prescribes governmental liability under the Texas Tort Claims Act states:

A governmental unit in the state is liable for:

(1) personal injury ... proximately caused by the wrongful act or omission of the negligence of an employee acting within his scope of employment if:

(A) the personal injury ... arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury ... so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021. Since all three Defendants are peace officers, the Court must therefore consider whether they are entitled to official immunity. Government employees, such as peace officers, are entitled to immunity from suit arising from the performance of: 1) discretionary duties in 2) good faith as long as they are 3) acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *Font v. Carr*, 867 S.W.2d 873, 879 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd). The question of an officer's individual negligence is immaterial when determining whether he was performing discretionary functions. *Vasquez v. Hernandez*, 844 S.W.2d 802, 804 (Tex.App.—San Antonio 1992, writ dism'd). As the Texas Supreme Court noted, "[t]he complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently." *Chambers*, 883 S.W.2d at 655. Thus, peace officers are immune from the Tort Claims Act if it can be shown that they were cloaked with official immunity. *Cameron County v. Alvarado*, 900 S.W.2d 874, 879 (Tex.App.—Corpus Christi 1995, no writ).

■ Discretionary acts are those requiring personal deliberation, decision, and judgment. *Texas Dept. of Public Safety v. Perez*, 905 S.W.2d 695, 698 (Tex.App.—[14th Dist.] 1995, no writ). In *Perez*, a State Trooper was sued for placing Plaintiff Perez under arrest for expired vehicle registration tags and failure to produce a driver's license. During the stop, Plaintiff's wife was involved and began shouting and pointing her finger at the Trooper. After Plaintiff found his driver's license in the glove compartment and the Trooper determined there were no outstanding warrants on the Plaintiff, he uncuffed him. The Court of Appeals opined:

A police officer has limited information at his disposal during a traffic stop. It is paramount that a police officer at all times retain control over a traffic stop [and] a prudent officer must constantly be on guard ... And, when an officer observes what he perceives to be a situation which may pose a risk to his or the public's security, he must decide whether or not to use some degree of force to avoid possible escalation of the event into something more serious.... Consequently, a police officer is given wide discretion to decide what actions to take when he makes a traffic stop.... [I]f an officer has an doubts about the situation he should not permit a motorist to return to his vehicle because the motorist could drive away, run away, escalate the situation or even retrieve a weapon.

*Id.* at 699. In this case, the Plaintiffs did attempt to drive away, disobeyed the Officers orders, and resisted arrest. Placing Lagarde under arrest and into a police vehicle was a discretionary act on the part of the Officers displaying proper deliberation, decision, and judgment.

■ The next requirement, good faith, is established by a showing that a reasonable and prudent police officer could have believed the conduct was lawful in light of clearly established law and the information possessed by the officer to place Lagarde

under arrest and into a police vehicle.[3] *Id.* The factual situation which had previously arisen leading up to the arrest establishes that a reasonably prudent police officer would have thought the appropriate action was to arrest and place Lagarde into the police vehicle.

Lastly, the Officers must prove they were acting within their scope of authority. "An official acts within the scope of his authority if he is discharging duties generally assigned to him." *Id.* at 700. This Court finds that Officers Lauderdale, Dieshler, and Williams were acting within the scope of their authority because they lawfully stopped Plaintiffs for speeding, found that Swenson had an expired driver's license, no insurance, no registration, and further that both Plaintiffs disobeyed direct orders and resisted arrest. All of these violations were within the Officers' scope of authority according to the laws of Texas. This Court concludes that all three Defendants enjoy official immunity from suit under the Texas Tort Claims Act.

### III. Conclusion

Based upon the analysis above, it is the opinion of this Court that the Defendants are entitled to qualified immunity and are therefore granted summary judgment in this cause of action. Accordingly,

**IT IS ORDERED** the motions for summary judgment by Officers Lauderdale, Dieshler, and Williams are hereby **GRANTED,** and any other motions now before the Court are dismissed as **MOOT.**

---

**3.** Furthermore, it remains undisputed whether Lagarde and Swenson were continuing to resist arrest while being placed in the police cars. It is also plausible that if the police car door did hit Lagarde in the head, it was a result of him resisting entrance into the vehicle.