**Robert L. LEWIS, Plaintiff,**

v.

**CONTINENTAL AIRLINES, INC., City of Houston, Houston Police Department, Globe Security Services, Inc., a/k/a Globe Security Systems, and Sandra D. Tisdel, Defendants.**

No. Civ.A. H–98–2212.

United States District Court, S.D. Texas.

Dec. 14, 1999.

Susan J. Taylor, Bond Taylor and Lee, Houston, TX, for Robert L. Lewis, plaintiff.

Rachel Giesber, Fulbright & Jaworski, Houston, TX, for Continental Airlines Incorporated, defendant.

Richard John Urra, for Houston Police Department, defendant.

Claude R. Treece, Gardere Wynne, Houston, TX, for Globe Airport Security Services Inc, defendant.

### MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendants Continental Airlines, Inc. ("Continental") and Sandra D. Tisdel's ("Tisdel") Motion for Summary Judgment (# 40). Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment should be granted.

I. *Background*

Plaintiff Robert L. Lewis ("Lewis") was traveling on a Continental flight from Kansas City, Missouri, to Atlanta, Georgia, on April 24, 1997. His itinerary included a connecting flight at Bush Intercontinental Airport in Houston, Texas. According to Lewis, after arriving on time for his connecting flight, he approached a Continental ticket agent who informed him that his connecting flight had been delayed for thirty minutes, and he chose to wait in a seat across from the ticket counter. Lewis

maintains that thirty minutes later, upon noticing that the same ticket agent had moved to another gate, he approached the agent and was told that his flight had departed ten minutes earlier. Lewis contends that the airline had not announced the flight's departure. Although Lewis missed the flight, his luggage had already been placed on board, and it continued to Atlanta on the scheduled flight.

Upon learning of the flight's departure, Lewis spoke with Concourse Superintendent Paul Montague about his dilemma. Montague offered Lewis complimentary overnight accommodations and meal vouchers, agreeing that Continental would book him on the earliest possible flight to Atlanta the following morning. According to Lewis, he stayed the night at the hotel arranged by Continental and arrived at the airport early the next morning hoping to book a flight leaving earlier than Continental's 11:00 a.m. departure. A Continental ticket agent purportedly informed him that Delta Airlines had a 6:00 a.m. flight to Atlanta and instructed him to go to a Continental Airlines ticket counter to make the arrangements. At the counter, Lewis claims that he spoke with Continental ticket agent Tisdel. Lewis states in his complaint that he informed Tisdel about his experience the previous night, but "Tisdel was quite rude and not helpful in obtaining the flight ticket for the Delta Airlines flight." Lewis admits that he then stated "in frustration to Tisdel that there could have been a bomb in the luggage that went on to Atlanta the previous night" or words to that effect. There is a dispute as to the exact words that were spoken. At deposition, Lewis contended that he said, "There could have been a bomb in my bag," adding that his purpose in making such a statement was to point out an oversight on the part of Continental, because "there should have been more concern for ... a passenger not being on that flight with his luggage." At deposition, Tisdel recalled that he said, "Well, what if I had a bomb in my bags?" She recounted that, after he made the comment, she "looked at him and [ ] said to him, 'I realize that

you're angry, but that is not something that you can talk about in the airport.'" According to Tisdel, Lewis then proceeded to say, "'Well, I don't care.' 'I don't care if the whole airport blows up.'" Lewis denies having made a comment about the airport blowing up.

Tisdel responded to Lewis's remarks by first commenting that she should call security and then summoning a security officer. Lewis states "[u]pon information and belief" that, at that point, an employee of defendant Globe Airport Security Services, Inc. ("Globe") approached him, requested picture identification, and "was rude and obnoxious and treated [him] like a criminal." He contends that Globe personnel turned him over to officers of the Houston Police Department ("HPD"), who took him to an interrogation room. Tisdel maintains that she never saw a Globe officer on the scene and that it was HPD officers who answered her call. Lewis alleges that upon being approached by the officers, he "was fully cooperative and allowed them to search his person as well as a computer bag that he was carrying. Nothing of any substance was found either on [his] person or in the computer bag." Continental, however, contends that Lewis was initially uncooperative with security and would not immediately surrender his identification when asked.

Lewis claims that following the interrogation, he was handcuffed and taken to the Harris County Jail, where he was incarcerated for twelve to fourteen hours after being charged with aggravated assault against Tisdel and with making a terroristic threat. He also contends that despite his informing the HPD that he was epileptic and that his medication was in his luggage on board the flight that arrived in Atlanta the previous evening, the HPD refused him any medical attention. After he was released on bond, Lewis returned to Kansas City the following morning on an American Airlines flight. Ultimately, on July 16, 1997, the charges against him were dismissed for insufficient evidence.

Lewis instituted this action on July 14, 1998, asserting claims against Continental, the City of Houston, the HPD, Globe, and Tisdel for assault, negligence, gross negligence, malicious prosecution, false arrest, intentional infliction of emotional distress, and violation of his right to be free from unwarranted search and seizure under the Fourth and Fourteenth Amendments of the United States Constitution. His claims against the City of Houston, the HPD, and Globe were subsequently dismissed. On August 21, 1998, Continental filed a motion to dismiss, arguing that all of Lewis's claims against it were preempted by the Federal Aviation Act ("FAA"), 49 U.S.C. §§ 41713–41742, which preempts state laws related to the price, route, or service of an air carrier. The court denied the motion to dismiss on March 10, 1999, rejecting Continental's argument in the context of this case. Subsequently, on July 21, 1999, Continental and Tisdel filed the instant motion, seeking summary judgment on all Lewis's claims. Lewis responded in part, arguing that "there are genuine issues of fact with respect to each element of Plaintiff's causes of action for assault, negligence/gross negligence, malicious prosecution and false arrest."

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir.1997), *cert. denied*, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). The moving parties, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Colson*, 174 F.3d at 506; *Marshall*, 134 F.3d at 321–22; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir.1993)); *see Colson*, 174 F.3d at 506; *Marshall*, 134 F.3d at 321; *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999); *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999); *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 776 (5th Cir.1997). " 'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.' " *Reves v. Ernst & Young*, 507 U.S. 170, 190 n. 3, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (quoting

*Anderson,* 477 U.S. at 255, 106 S.Ct. 2505); *Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); *see Marshall,* 134 F.3d at 321. Nonetheless, " 'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.' " *Eastman Kodak Co. v. Image Tech. Servs.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original). "If the [non-moving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072.

The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little,* 37 F.3d at 1075; *see Hart,* 127 F.3d at 435; *Wallace,* 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir. 1990) (citing *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Wenner,* 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

■ Summary judgment may not be awarded by default, however, merely because the non-moving party has failed to respond on certain issues. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hetzel v. Bethlehem Steel Corp.,* 50 F.3d 360, 362 n. 3 (5th Cir.1995) (citing *Hibernia Nat'l Bank,* 776 F.2d at 1279). Nonetheless, the district court may accept as undisputed the facts set forth in support of the motion for summary judgment to the extent it is unopposed. *See Eversley v. MBank Dallas,* 843 F.2d 172, 174 (5th Cir.1988); *Rayha v. United Parcel Serv., Inc.,* 940 F.Supp. 1066, 1068 (S.D.Tex.1996).

### B. *Assault and Battery*

■ Lewis asserts a cause of action for assault against Defendants under Texas law. Specifically, he alleges:

> Tisdel as a Continental employee, acting within the course and scope of her employment and with the knowledge and approval of Continental's management, intentionally and knowingly commanded, directed, advised, encouraged, procured, instigated, promoted, controlled, aided and abetted Globe, HPD and Houston in causing physical contact with Mr. Lewis when they knew or should have reasonably known [Lewis] would regard the contact as offensive.

In light of the language used in this count and in the parties' subsequent filings, this claim will be viewed as a common law assault and battery claim.

■ In Texas, the elements of a cause of action for assault and battery are the same in civil law as they are in criminal law. *See Green v. Industrial Specialty Contractors, Inc.,* 1 S.W.3d 126, 134 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Stokes v. Puckett,* 972 S.W.2d 921, 925 (Tex.App.—Beaumont 1998, no pet.) (citing *LaBella v. Charlie Thomas, Inc.,* 942 S.W.2d 127, 138 (Tex.App.—Amarillo 1997,

writ denied)); *Price v. Short,* 931 S.W.2d 677, 687 (Tex.App.—Dallas 1996, no pet.). "A person commits an assault if he 'intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.' " *Green,* at 134 (quoting Tex.Pen. Code Ann. § 22.01(a)(3)); *see Garza v. City of Ennis,* No. CIV.A. 3:97–CV–1098–G, 1997 WL 756589, at *4 (N.D.Tex. Dec.3, 1997); *Stokes,* 972 S.W.2d at 925; *LaBella,* 942 S.W.2d at 138; *Price,* 931 S.W.2d at 687.

> "If an act is done with the intention of inflicting upon another an offensive but not a harmful bodily contact, or of putting another in apprehension of either a harmful or offensive bodily contact, and such act causes a bodily contact to the other, the actor is liable to the other for a battery although the act was not done with the intention of bringing about the resulting bodily harm."

*Misle v. State Farm Mut. Auto. Ins. Co.,* 908 S.W.2d 289, 291 (Tex.App.—Austin 1995, no writ) (quoting Restatement (Second) of Torts § 16(1) (1965)); *see Price,* 931 S.W.2d at 687–88. To establish a claim for assault and battery in a civil action, the plaintiff must show that the defendant intentionally or knowingly threatened him with imminent bodily injury. *See Garza v. United States,* 881 F.Supp. 1103, 1106 (S.D.Tex.1995); *Robinson v. State,* 630 S.W.2d 394, 403 (Tex. App.—San Antonio 1982, pet. ref'd) (citing *McCullough v. State,* 24 Tex.App. 128, 5 S.W. 839 (1887)). Moreover, to prevail, a plaintiff must show that physical contact occurred. *See Preble v. Young,* 999 S.W.2d 153, 156 (Tex.App.—Houston [14th Dist.] 1999, no pet.).

"Where one person assists another in making an assault, both are principals and liable in damages for any injury inflicted." *Milliken v. Skepnek,* No. 14–96–01522–CV, 1999 WL 496505, at *6 (Tex. App.—Houston [14th Dist.] July 15, 1999, no pet.) (citing *Stein v. Meachum,* 748 S.W.2d 516, 518–19 (Tex.App.—Dallas 1988, no writ); *Francis v. Kane,* 246 S.W.2d 279, 281 (Tex.Civ.App.—Amarillo 1951, no writ)). "Anyone who commands, directs, advises, encourages, procures, controls, aids, or abets a wrongful act by another, is just as responsible for the wrongful act as the one who actually committed it." *Id.* (citing *Stein,* 748 S.W.2d at 518–19); *see Francis,* 246 S.W.2d at 281. Nevertheless, "[o]vert participation or some form of encouragement in the commission of the assault is required." *Id.*

Defendants argue that Lewis's assault and battery claim fails as a matter of law because Tisdel and Continental indisputedly did not make physical contact with Lewis. Lewis, however, argues that Tisdel "commanded, directed, advised, encouraged, procured, instigated, promoted, controlled, aided and abetted" in the alleged assault and battery and is therefore liable for it. His theory, as stated in his response to the summary judgment motion, is that "[d]ue to Defendant Tisdel's statement to the police, the Plaintiff was touched by being handcuffed, arrested, and held in jail." He notes that after Tisdel called security, Lewis was approached by HPD officers who searched, handcuffed, and detained him.

In support of this theory, Lewis points to *Stein,* where the defendant moved for a new trial after a default judgment was entered against him for committing assault under the theory that "[a]t [Stein's] instruction and behest one, Joel Wayne West, hit me in the face and then hit me about the head several times with a telephone receiver." 748 S.W.2d at 518. In affirming the district court's denial of the motion, the court found that, rather than disputing that he directed an assault against the plaintiff, the defendant merely presented evidence in support of his motion that negated the claim that he had personally threatened or touched the plaintiff. *See id.* at 518–19. The court viewed Stein's failure to address the plaintiff's theory of liability based on encouraging another to commit an assault as a failure to " 'set up' a meritorious defense."

*Id.* at 519. In reaching its decision, the court in *Stein* relied in part on *Francis*, an earlier Texas appeals court decision in which a father and son approached the plaintiff, who was sitting in an automobile in front of his office, when the son began to beat and choke him. *See* 246 S.W.2d at 280. The father directed the son to pull the plaintiff out of the automobile, and the son complied with his father's instruction before continuing to fight. *See id.* In the plaintiff's personal injury suit against both the father and the son for assault, the court found that the defendants had acted in concert and that the father, through his conduct and statements, "assented to" and was, therefore, liable for the assault. *See id.* at 281–82.

Unlike *Stein*, Tisdel and Continental set up a meritorious defense to Lewis's claim that she participated in the alleged assault and battery. They have provided evidence in the form of Tisdel's affidavit in which she states that while she called the HPD for assistance, she "did not ask or intend that Mr. Lewis be arrested or prosecuted," "did not ask or direct the officers to restrain or arrest Mr. Lewis," and "did not aid or instruct the Houston police officers who arrived in their performance of their official duties." Lewis offers no evidence to rebut Tisdel's statements. In fact, the record reflects that, aside from initially calling security, Tisdel's only participation was "just to say this is the gentleman" upon the arrival of security and, when approached by HPD officers after they had spoken with Lewis, signing and possibly writing a witness account of the events that had transpired. In his deposition, Lewis conceded that he had no recollection of Tisdel or any other ticket agent talking to HPD officers after their arrival:

> Q. Did you ever see any of the Houston Police Department officers go up to the Continental ticket agent and talk to those people?
>
> A. No, ma'am.
>
> Q. Did you ever see the security officer go up to the Continental ticket agent?

A. No, ma'am.

Thus, Defendants have set forth a meritorious defense to Lewis's assault claim. Unlike *Francis*, there is no evidence that Tisdel or any other Continental employee directed, encouraged, or otherwise "assented to" any assault or battery that may have occurred. Here, the evidence indicates that Tisdel merely turned the matter over to security and was not otherwise involved in any actions taken by the HPD. Hence, in the absence of a showing that Tisdel or Continental commanded, directed, procured, or controlled the actions of the HPD officers, summary judgment is warranted on Lewis's assault claim.

### C. *Negligence and Gross Negligence*

 Lewis also claims Tisdel, acting within the course and scope of her employment with Continental, negligently informed security officers that he was a potential security risk, thus breaching Continental's duty of care to him and leading to his injury. He additionally alleges that Continental was negligent in hiring employees whose actions proximately caused his injuries. Under Texas law, a negligence claim consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury. *See Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir.1997) (citing *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir.1993), *cert. denied*, 510 U.S. 1178, 114 S.Ct. 1220, 127 L.Ed.2d 566 (1994)); *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). Lewis also alleges gross negligence on the part of Defendants. Gross negligence requires a showing of conscious indifference:

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the

belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Universal Servs. Co. v. Ung,* 904 S.W.2d 638, 640 (Tex.1995); *accord City Nat'l Bank v. United States,* 907 F.2d 536, 541 (5th Cir.1990); *see Boyce v. Greenway,* 71 F.3d 1177, 1181 (5th Cir.), *cert. denied,* 517 U.S. 1244, 116 S.Ct. 2499, 135 L.Ed.2d 191 (1996) (citing *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 19–20 (Tex.1994)).

Texas courts have refused to recognize a cause of action for negligence or gross negligence independent from a claim for malicious prosecution when it is brought to recover for damages suffered as a result of an allegedly wrongful criminal prosecution. *See Smith v. Sneed,* 938 S.W.2d 181, 185 (Tex.App.—Austin 1997, no writ); *ITT Consumer Fin. Corp. v. Tovar,* 932 S.W.2d 147, 155–56 (Tex.App.—El Paso 1996, writ denied); *Wal–Mart Stores, Inc. v. Medina,* 814 S.W.2d 71, 74 (Tex.App.—Corpus Christi 1991, writ denied); *see also Campbell v. City of San Antonio,* 43 F.3d 973, 981 (5th Cir.1995). Here, "[t]he gist of [Lewis]'s case was clearly to seek recovery for injuries caused by the prosecution." *See Medina,* 814 S.W.2d at 74. Lewis asserts that Defendants are liable for negligently informing law enforcement officers that he was a potential security risk, negligently assisting the HPD in falsely arresting him, and negligently hiring employees who engaged in such conduct, all of which, he contends, proximately caused him to sustain damages in the course of his arrest and subsequent prosecution. "These damages clearly fall within the scope of the tort of malicious prosecution." *Id.; see State v. Bolander,* No. 01–97–01200–CV, 1998 WL 505691, at *6 (Tex.App.—Houston [1st Dist.] Aug.20, 1998, no pet.). "Where an individual is implicated in a crime, subsequently exonerated, and then brings a claim for damages caused by the disclosure of information to the police and the criminal prosecution, such a complaint is in essence a claim for malicious prosecution." *Smith,* 938 S.W.2d at 183.

Recognizing that public policy favors the encouragement and protection of persons who report facts regarding a potential crime to prosecutors, the courts have found that "a plaintiff cannot avoid the strict elements of a malicious prosecution action by labeling it negligence." *Tovar,* 932 S.W.2d at 155–56 (citing *Pokorny v. First Fed'l Savs. & Loan Ass'n of Largo,* 382 So.2d 678, 683 (Fla.1980) ("A plaintiff contending that he had been improperly arrested as the result of negligence ... must bear the burden of establishing malice and want of probable cause")); *see Bolander,* 1998 WL 505691, at *6; *Smith,* 938 S.W.2d at 184. As the courts have recognized, "[t]he tort of malicious prosecution serves an important purpose. It exists between the tension of two important societal interests: encouraging the reporting of crimes and discouraging wrongful or unjustifiable prosecution." *Id.* "In order to maintain this delicate balance between encouraging people to report crimes and avoiding oppressive litigation of criminal charges, individuals cannot be held liable where their purpose in making an accusation was the socially beneficial one of bringing an offender to justice, without a malicious intent." *Id.* "The efficient enforcement of criminal law requires that 'private persons who aid in the enforcement of the law should be given an effective protection against the prejudice that is likely to arise from the termination of prosecution in favor of the accused.'" *Id.* (quoting *Browning–Ferris Indus., Inc. v. Lieck,* 881 S.W.2d 288, 290 (Tex.1994)). "This policy justifies the various restrictions and limitations applicable to malicious prosecution suits complaining of criminal proceedings and explains why such actions are disfavored in the law." *Id.; accord Tovar,* 932 S.W.2d at 156. Such arguments are equally applicable to a cause of action for negligent initiation or prosecution of a criminal proceeding. *See Smith,* 938 S.W.2d at 184; *Tovar,* 932 S.W.2d at 156. "'There is no recovery in tort for damage caused by an incorrect, but not malicious prosecution.'" *Tovar,* 932

S.W.2d at 156 (quoting *Medina*, 814 S.W.2d at 73–74); *see Campbell*, 43 F.3d at 981. Texas courts "therefore decline to hold that a duty exists outside the torts of malicious prosecution and defamation not to falsely accuse someone of criminal wrongdoing." *Smith*, 938 S.W.2d at 185 (citing *Campbell*, 43 F.3d at 981; *Tovar*, 932 S.W.2d at 155–56).

In *Campbell*, the Fifth Circuit, when rejecting a state law claim brought against a law enforcement officer for "negligent misidentification" of the plaintiff, looked not only to malicious prosecution cases, but also to libel and slander decisions, noting that Texas recognizes at least a qualified privilege for the communication of alleged wrongful acts to an official authorized to protect the public from these acts. *See* 43 F.3d at 979–80. The effect of the privilege is to justify the communication when it was made with proper motives and without actual malice. *See id.* at 980. The communication is privileged unless made with the knowledge that it was false or with reckless disregard for whether it was false. *See id.* "The privilege is founded on 'a strong public policy consideration,' it being 'vital to our system of criminal justice' that there be the ability to 'communicate to peace officers the alleged wrongful acts of others without fear of civil action for honest mistakes.' " *Id.* (quoting *Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex.Civ.App.—Corpus Christi 1977, no writ)). Reasoning by analogy, the court held that allowing a cause of action for negligently identifying a party as a perpetrator of a crime would "negate the justification that the law of libel and slander gives to such a communication so long as it is made believing it to be true; and allowing such a cause of action would be contrary to the public policy that is the foundation for that justification." *Id.*

"In light of the public policy considerations and the law of malicious prosecution ..., it would be improper ... to apply principles of negligence here." *Medina*, 814 S.W.2d at 74. Recognizing a cause of action for negligence in this situation "would in substance convert the Texas tort of *malicious* prosecution to one of *negligent* prosecution." *Campbell*, 43 F.3d at 981 (emphasis in original). Thus, Defendants are entitled to summary judgment on Lewis's claims of negligence and gross negligence.

### D. *Malicious Prosecution*

Lewis asserts an independent cause of action for malicious prosecution based on his contentions that Tisdel initiated the prosecution, acted with malice, and lacked probable cause for her actions. Continental argues that it did not cause or procure the prosecution of Lewis, that there was probable cause for Tisdel to call the police, and that Tisdale's conduct was not actuated by malice.

To prevail on a malicious prosecution claim, the plaintiff must show that (1) a criminal action was commenced against him, (2) the prosecution was caused by the defendant or with his aid, (3) the action terminated in the plaintiff's favor, (4) the plaintiff was innocent, (5) the defendant acted without probable cause, (6) the defendant acted with malice, and (7) the criminal proceeding damaged the plaintiff. *See Hayter v. City of Mount Vernon*, 154 F.3d 269, 275 (5th Cir.1998); *Hart*, 127 F.3d at 451; *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir.1994) (citing *Brown v. United States*, 653 F.2d 196, 198 (5th Cir.1981), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982)); *Pete v. Metcalfe*, 8 F.3d 214, 219 (5th Cir.1993); *Sanders v. Fort Bend County*, 932 F.Supp. 894, 897 (S.D.Tex.1996); *Swenson v. Culberson County*, 925 F.Supp. 478, 485 (W.D.Tex. 1996); *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex.1997). In this instance, it is undisputed that a criminal action was commenced against Lewis and that it terminated in his favor when the charges of aggravated assault and terroristic threat were dismissed. It is also uncontested that Lewis sustained some damages as a result of the incident. There is a dispute, however, as to whether the evi-

dence supports the remaining elements of a malicious prosecution claim.

██ The Texas Supreme Court has adopted the requirements set forth in the Restatement (Second) of Torts § 653 for a cause of action for malicious prosecution, wherein causation is established when the defendant "initiates or procures" a criminal prosecution. *See Lieck*, 881 S.W.2d at 292–93; *see also Smith v. Davis*, 999 S.W.2d 409, 413 (Tex.App.—Dallas 1999, no pet.); *Smith v. Yalamanchili*, No. 14–98–00322–CV, 1999 WL 976338, at *2 (Tex. App.—Houston [14th Dist.] Oct.28, 1999, no pet. h.). The court in *Lieck* found that "[a] person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities" and "[a] person procures a criminal prosecution if his actions are enough to cause the prosecution, and but for his actions the prosecution would not have occurred." 881 S.W.2d at 292; *see Davis*, 999 S.W.2d at 414; *Thrift v. Hubbard*, 974 S.W.2d 70, 77 (Tex.App.—San Antonio 1998, no pet.); *Alvarez v. Anesthesiology Assocs.*, 967 S.W.2d 871, 875 (Tex.App.—Corpus Christi 1998, no pet.).

Here, the record reflects that Tisdel called security to assist her in dealing with Lewis, who appeared to her to be unduly agitated. She stated in her deposition and affidavit that she did not summon security to arrest Lewis but rather to calm him down and to evaluate his demeanor. There is no evidence that she made a formal charge to law enforcement authorities. Tisdel stated at deposition that when she called security, she "probably said something to the effect that there's a gentleman at the ticket counter that is talking about bombs, and I've asked him to refrain from that and he said that he doesn't care if the whole airport blows up." When questioned at deposition, Lewis did not recall what Tisdel said when she called security:

Q. Did you see Ms. Tisdel call security or call for anyone?

A. If I recall, I mean I can't vividly recall, but I guess maybe she did

pick up the telephone, and that was it.

In her deposition, Tisdel also stated:

Q. Did you talk to the Houston police officers when they came?

A. They came up after they had talked with Mr. Lewis and asked me to—I don't remember if it was they [who] wrote the scenario and I signed it or I wrote the scenario and I signed it. But it was as a witness to what transpired.

Q. Did you ever make a statement to the Harris County prosecutors?

A. No.

\*　　\*　　\*　　\*　　\*　　\*

Q. Did you sign any criminal complaints?

A. Not that I recall.

Hence, rather than filing a formal charge against Lewis, Tisdel merely gave a witness statement at the request of HPD officers. Lewis has adduced no evidence that might lead to a contrary conclusion, such as the text of the statement signed by Tisdel or an affidavit or deposition transcript showing that Tisdel lodged a formal charge against him. Thus, Lewis has not shown that Tisdel initiated the criminal prosecution at issue. *See Lieck*, 881 S.W.2d at 292.

██ As Defendants point out, there is also insufficient evidence to show that Tisdel procured the criminal prosecution. In his affidavit, Jeffery Bruce Vaden ("Vaden"), formerly an assistant district attorney for Harris County, who was involved in the case against Lewis, notes that "[n]either Ms. Tisdel nor Continental Airlines had the ability or authority to arrest, charge, or prosecute Mr. Lewis." He also states that in deciding to charge Lewis, "the Harris County District Attorneys' Office did not act at the instruction or direction of Ms. Tisdel or Continental Airlines" and that "[n]either Ms. Tisdel nor Continental Airlines participated in the decision to charge Mr. Lewis; that was sole-

ly the decision of the Harris County District Attorney's Office." Tisdel asserts in her affidavit that she did not know that charges had been filed against Lewis until a later time. "[A] person cannot procure a criminal prosecution when the decision to prosecute is left to the discretion of another person, a law enforcement official or the grand jury." *Id.* "[G]iving the information or even making an accusation of criminal misconduct does not constitute a procurement·of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not." *Id.* at 293 (citation omitted). Thus, the record reflects that the decision to prosecute Lewis was not in Tisdel's or Continental's control.

 An exception exists, however, "when a person provides information which he knows is false to another to cause a criminal prosecution." *Id.* at 292; *see Yalamanchili,* 1999 WL 976338, at *2. While Lewis does not claim that Tisdel gave false information, he alleges that she "merely informed the police that [he] made a remark regarding a bomb," adding that "[h]ad Ms. Tisdel been more forthcoming, the police may have chosen not to arrest him for making a terroristic threat." Nevertheless, as noted above, Lewis stated at deposition that he was unaware of what Tisdel said when she summoned security. The unrebutted evidence establishes that Tisdel notified security that Lewis was "talking about bombs," a fact which Lewis admits is true, and later signed or filled out a witness statement at the request of the police after they had spoken with Lewis. Tisdel stated in her deposition that she relayed "the scenario" in that statement. Lewis has produced no evidence that Tisdel omitted any pertinent or potentially exculpatory facts in her statements to the police. Moreover, Lewis asserted in his deposition that, while still in the airport interrogation room, he was given and availed himself of the opportunity to relay fully his version of the events both orally and in writing. Hence, there is no support for Lewis's claim that Tisdel either initiated or procured his criminal prosecution.

 There is, likewise, no evidence that Tisdel or Continental acted with malice. Malicious prosecution requires, among other elements, a showing that the defendant acted with malice. *See Campbell,* 43 F.3d at 981 (citing *James v. Brown,* 637 S.W.2d 914, 918 (Tex.1982)). "Malice is generally defined as ill will, evil motive, gross indifference, or reckless disregard of the rights of others." *Thrift,* 974 S.W.2d at 80 (citing *Digby v. Texas Bank,* 943 S.W.2d 914, 922 (Tex.App.—El Paso 1997, writ denied); *Closs v. Goose Creek Consol. Indep. Sch. Dist.,* 874 S.W.2d 859, 878 (Tex.App.—Texarkana 1994, no writ)). "Under Texas law, malice may be inferred from the lack of probable cause or from a finding that the defendant acted in reckless disregard of the other person's rights." *Hayter,* 154 F.3d at 275; *see Yalamanchili,* 1999 WL 976338, at *3. For a claim of malicious prosecution to be actionable, the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice. *See* RESTATEMENT (SECOND) OF TORTS § 668. Maliciously tendering false information, or deliberately concealing or deliberately failing to disclose exculpatory information, can give rise to an inference that the defendant acted with malice in initiating or maintaining a prosecution. *See Martin v. Thomas,* 973 F.2d 449, 457 (5th Cir.1992); *Sanders v. English,* 950 F.2d 1152, 1163 (5th Cir.1992); *Wheeler v. Cosden Oil & Chem. Co.,* 734 F.2d 254, 260 (5th Cir.1984); *Richey,* 952 S.W.2d at 519.

 In the case at bar, the unrefuted evidence reflects that Tisdel did not expect or intend Lewis to be arrested when she called security. It is well established that merely reporting facts to the proper authorities does not support a claim of malicious prosecution. *See Tovar,* 932 S.W.2d at 160; *Yianitsas v. Mercantile Nat'l Bank at Dallas,* 410 S.W.2d 848, 851 (Tex. Civ.App.—Dallas 1967, no writ). Lewis argues that Tisdel's alleged failure to disclose all of the relevant facts to the HPD is evidence of malice. He fails to demon-

strate, however, that Tisdel omitted any pertinent facts when she related "the scenario" to HPD officers. The record also contains no indication that Tisdel was motivated by a wrongful purpose in reporting the incident. Tisdel testified at her deposition that she called security to assist in the situation because Lewis's language and irritable attitude led her to have safety concerns:

> With his irritability, it seemed as though at that time it was increasing, I became scared—not scared for my personal safety but more afraid of if he was that irrational on the ground, what he would be like in an aircraft. And I felt it was safer to deal with that type of anger on the ground.

She explained in her affidavit, "Based on Mr. Lewis' apparent anger, actions, and comments, I believed that Mr. Lewis might present a security risk, and I thought that the police should be notified." In fact, Lewis conceded at deposition that Tisdel's decision to call security was at least understandable:

Q. Did you have any complaint about the security guards being called to the scene? Did you think that was a reasonable response to the situation?

A. I had no complaint with that. I didn't have any problem with that.

 \* \* \* \* \* \*

Q. Now, you mentioned that you think it was reasonable for the security guard to be called to the scene based on a call from Continental?

A. Well, I don't necessarily think that it was reasonable, but I thought I could be understanding of such if it was done. I mean I knew when I saw it being done, I knew why it was being done.

In his deposition, Lewis stated, without explanation, that his "impression" of her statement that she should call security was "that she heard the word 'bomb' and, therefore, intended to exploit the word 'bomb' to create the havoc." Even if the court were to accept Lewis's unsubstantiated "impression" of Tisdel's motivation, under the circumstances, her actions do not rise to the level of "ill will, evil motive, gross indifference, or reckless disregard of the rights of others" required to demonstrate malice. *See Thrift*, 974 S.W.2d at 80. Any possible negligence on the part of Tisdel is simply insufficient to establish malice. *See Campbell*, 43 F.3d at 980–81.

As there is no evidence that Tisdel knowingly imparted false information or acted with reckless disregard for the truth or falsity of her statements, her communication to the police provides no basis for recovery. *See id.* Such a conclusion comports with the policy requiring strict adherence to the prerequisites for maintaining a malicious prosecution action. *See id.* at 981. "Texas courts have long recognized a strong public policy behind the various restrictions and limitations applicable to malicious prosecution suits complaining of criminal proceedings namely that 'public policy favors the exposure of crime.'" *Id.* (quoting *Parker v. Dallas Hunting & Fishing Club*, 463 S.W.2d 496, 499 (Tex.Civ.App.—Dallas 1971, no writ)). Because Lewis has not established that Tisdel initiated or procured his criminal prosecution, let alone acted with a malicious motive, summary judgment is proper on Lewis's malicious prosecution claim.

E. *False Arrest*

Lewis also asserts a claim against Tisdel and Continental for false arrest. In Texas, "[t]he elements of false arrest and false imprisonment are similar enough to be indistinguishable." *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 754 (Tex.App.—Corpus Christi 1998, no pet.). To establish the intentional torts of false arrest or false imprisonment, the plaintiff must show (1) willful detention, (2) without consent, and (3) without authority of law. *See Hart*, 127 F.3d at 450; *Pete*, 8 F.3d at 218; *Gladden v. Roach*, 864 F.2d 1196, 1201 (5th Cir.), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989);

*Garza,* 881 F.Supp. at 1107; *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (1985); *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985); *Fojtik v. Charter Med. Corp.,* 985 S.W.2d 625, 629 (Tex.App.—Corpus Christi 1999, no pet.). "A detention may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another." *Johnson,* 891 S.W.2d at 644–45; *see Grant v. Stop–N–Go Mkt. of Tex., Inc.,* 994 S.W.2d 867, 872 (Tex.App.—Houston [1st Dist.] 1999, no pet.). "Although physical restraint is one way to establish a willful detention, it is not the only way." *Id.* (citing *Johnson,* 891 S.W.2d at 645). Liability extends to any person who directs or requests an unlawful detention, including private citizens who request law enforcement officers to arrest a third party. *See Reicheneder v. Skaggs Drug Ctr.,* 421 F.2d 307, 311 (5th Cir.1970).

As Defendants contend and Lewis admits, Tisdel did not personally detain Lewis. Lewis testified in his deposition:

> Q. So at somewhere between 5:05 and 5:15, you've stepped back from the Continental counter and you're waiting on, I guess, security to arrive?
>
> A. Yes, Ma'am.
>
> Q. You were not restrained in any way? In other words, she didn't direct you to stay in a certain spot or sit in a room or anything like that?
>
> A. Not at that time, no.

Lewis contends, however, that "Tisdel called the Houston Police and, based on Tisdel's call, the police arrested the Plaintiff." As the uncontroverted evidence demonstrates, however, Tisdel did not direct or request the HPD to detain Lewis. Tisdel states in her affidavit that she "did not ask the officers to arrest Mr. Lewis" and "did not aid or instruct the Houston police officers who arrived in their performance of their official duties." Aside from calling security, the only actions Tisdel took were to point out Lewis to the officers when they arrived and to give a witness statement regarding the incident at the officers' request. The decision to detain and arrest Lewis was made by HPD officers independently of Tisdel and Continental. Vaden confirms this in his affidavit, stating "[n]either Ms. Tisdel nor Continental made or participated in the decision to arrest Mr. Lewis; that was solely the decision of the Houston Police Department." Thus, Lewis has not shown that Tisdel or Continental are responsible for his detention by the HPD.

Moreover, while the evidence does not indicate that Tisdel called the police for the purpose of reporting a crime, if she did, she was merely exercising a "citizen's privilege to report an alleged crime and identify the supposed offender," which is inadequate to support a claim of false imprisonment in Texas. *Harrison v. Southland Corp.,* 544 S.W.2d 692, 694 (Tex.Civ.App.—Dallas 1976, no writ); *see Villegas,* 975 S.W.2d at 754. It is uncontroverted that Tisdel notified security that Lewis was talking about a bomb, which he concedes is true. Even if his statement cannot be construed as a terroristic threat, other laws, such as the Bomb Hoax Act, prohibit making false statements about bombs in airports. *See* 18 U.S.C. § 35(a); *United States v. Irving,* 509 F.2d 1325, 1329 n. 3 (5th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975); *United States v. Omirly,* 488 F.2d 353, 356–57 (4th Cir.1973). The law "made it a misdemeanor to willfully and with knowledge of its falsity impart false information of a destructive device in, upon or in proximity to an aircraft." *Id.* at 356. Under the statute, "[t]o be sufficient, the information need not allege specifically a threat to destroy the plane, nor is there any required allegation of malice or evil purpose." *United States v. Sullivan,* 329 F.2d 755, 756 (2d Cir.), *cert. denied,* 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964) (citing *United States v. Allen,* 317 F.2d 777, 777–79 (2d Cir.1963)). Hence, if Tis-

del were found to have summoned the police for the express purpose of reporting an alleged crime, the citizen's privilege would shield her from liability. Therefore, Lewis's false arrest claim is without merit.

### F. Intentional Infliction of Emotional Distress

 While Lewis includes a claim for intentional infliction of emotional distress in his complaint, he does not address this claim in his response to the motion for summary judgment and has apparently abandoned it. Nevertheless, to prevail on a claim for intentional infliction of emotional distress under Texas law, a plaintiff must establish:

(1) the defendant acted intentionally or recklessly;

(2) the defendant's conduct was extreme and outrageous;

(3) the defendant's actions caused him emotional distress; and

(4) the emotional distress suffered by him was severe.

See Hart, 127 F.3d at 452; Ward v. Bechtel Corp., 102 F.3d 199, 203 n. 2 (5th Cir.1997); Burden v. General Dynamics Corp., 60 F.3d 213, 218 (5th Cir.1995); MacArthur v. University of Tex. Health Ctr., 45 F.3d 890, 898 (5th Cir.1995); Mattix–Hill v. Reck, 923 S.W.2d 596, 597 (Tex. 1996); Johnson, 891 S.W.2d at 644; Twyman v. Twyman, 855 S.W.2d 619, 621–22 (Tex.1993).

 Although "extreme and outrageous," as used in the second element of this standard, is an amorphous phrase that escapes precise definition, there appears to be a consensus that conduct is "outrageous" if it is "atrocious" and surpasses "all possible bounds of decency," such that it is "utterly intolerable in a civilized community." See McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 564 (5th Cir.1998); MacArthur, 45 F.3d at 898; Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 243 (5th Cir.1993); Johnson v. Merrell Dow Pharm., Inc., 965 F.2d 31. In Dean, the Fifth Circuit (citing RESTATE-MENT (SECOND) OF TORTS § 46 cmt. d (1965)) explained:

> Liability [for outrageous conduct] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.... Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."

885 F.2d at 306. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. See Ugalde, 990 F.2d at 243; Johnson, 965 F.2d at 33; Wilson v. Monarch Paper Co., 939 F.2d 1138, 1143 (5th Cir. 1991). "There is no occasion for the law to intervene in every case where someone's feelings are hurt." Johnson, 965 F.2d at 33.

Here, Lewis has not alleged any conduct by Tisdel or Continental that even approaches extreme or outrageous behavior. A brief perusal of the depositions and affidavits submitted in support of this claim shows that Lewis was not subjected to any actions by Tisdel or Continental that could be viewed as surpassing "all possible bounds of decency." Rather, upon Lewis's admitted reference to a bomb in an airplane, Tisdel merely summoned security to defuse a potentially disruptive situation. There is no evidence that Tisdel or Continental assaulted, abused, threatened, or demeaned him. In short, none of the conduct that Lewis attributes to Defendants is so vile or reprehensible as to be "utterly intolerable in a civilized community."

 Moreover, Lewis has not shown that any emotional distress he may have suffered was severe. For a claim of intentional infliction of emotional distress to be cognizable under Texas law, there must be "sufficient proof of severe emotional distress, wholly apart from any outrageous conduct on the defendant's part." Tidelands Auto. Club v. Walters, 699

S.W.2d 939, 944 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.); *see Badgett v. Northwestern Resources Co.,* 818 F.Supp. 998, 1003 (W.D.Tex.1993). "Severity of distress is an element of the cause of action, not simply a matter of damages." *Benavides v. Moore,* 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, writ denied) (citing *K.B. v. N.B.,* 811 S.W.2d 634, 640 (Tex.App.—San Antonio 1991, writ denied), *cert. denied,* 504 U.S. 918, 112 S.Ct. 1963, 118 L.Ed.2d 564 (1992)).

 "Emotional distress" means any highly unpleasant mental reaction such as extreme grief, shame, humiliation, embarrassment, anger, disappointment, worry, and nausea. *See Behringer v. Behringer,* 884 S.W.2d 839, 844 (Tex.App.—Fort Worth 1994, writ denied); *see also Badgett,* 818 F.Supp. at 1003; *Washington,* 887 S.W.2d at 216; *Tidelands Auto. Club,* 699 S.W.2d at 941. In order to recover damages, however, the plaintiff must prove more than mere worry, anxiety, vexation, embarrassment, or anger. *See McCray v. DPC Indus., Inc.,* 875 F.Supp. 384, 392 (E.D.Tex.1995) (citing *Regan v. Lee,* 879 S.W.2d 133, 136 (Tex. App.—Houston [14th Dist.] 1994, no writ)); *Haryanto v. Saeed,* 860 S.W.2d 913, 923 (Tex.App.—Houston [14th Dist.] 1993, writ denied). "The law intervenes only where the distress is so severe that no reasonable person should be expected to endure it." *Behringer,* 884 S.W.2d at 844 (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. j (1965)). Hence, in *Benavides,* the court found the plaintiff's admission that she had not consulted any mental health professionals and did not intend to do so to be indicative "that whatever actual distress [she] suffered, it did not rise to the level that a reasonable person could not be expected to endure." 848 S.W.2d at 196.

In this instance, Lewis does not claim to have experienced any psychiatric problems as a result of Tisdel's or Continental's conduct like those encountered by the plaintiff in *Johnson. See* 965 F.2d at 33. He certainly does not contend that he is suffering from anything approaching the possibly suicidal, manic-depressive illness and bipolar disorder experienced by the plaintiff in *Wilson. See* 939 F.2d at 1141; *see also Motsenbocker v. Potts,* 863 S.W.2d 126, 135 (Tex.App.—Dallas 1993, no writ); *American Med. Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 343 (Tex.App.—Houston [14th Dist.] 1991, no writ). Lewis also has not alleged that he suffers from post-traumatic stress syndrome, as diagnosed in *Haryanto. See* 860 S.W.2d at 922. Rather, he testified at deposition that his primary care physician, Dr. John Goldberg ("Dr.Goldberg"), prescribed or gave him samples of drugs typically prescribed for depression or anxiety. He added that he took the drugs on an "on and off" basis. He also indicated that Dr. Goldberg and other doctors, including a psychiatrist, wanted to put him on regular antidepressants, but that he refused out of concern that they might not combine well with his epilepsy medication.

Lewis further claims to have developed gastrointestinal problems, for which he consulted gastrointestinal specialists, and chronic, severe headaches and "different episodes of brain wave flashes," for which he consulted a neurologist, following his experience at Continental. In his complaint, he states that as a result of his experience, he also suffered a severe alteration of his sleeping patterns, loss of appetite, nausea, nightmares, helplessness, anger, a decreased ability to concentrate on his work, extreme nervousness, and irritability. Moreover, he stated at deposition:

Again, my whole—as far as my whole make-up in terms of ability to function and concentrate and so forth has just been, as far as I'm concerned, a big mess and totally untypical of myself as far as being an orderly person.

\* \* \* \* \* \*

I've had a total loss of self-esteem, nearly a complete loss of self-identity.... I don't understand why I had to go through the turmoil and all the mental anguish and distraught and all the embarrassment and harassment of having

been taken to a damn county jail and arrested. And I am still quite livid over that issue.

Lewis offers no evidence, however, to corroborate his deposition testimony or to support the remaining allegations set forth in the complaint concerning his mental condition. He has proffered no medical records in support of his claims or any affidavits from physicians, psychiatrists, or psychologists. Under these circumstances, Lewis's claimed emotional distress cannot be said to be "so severe that no reasonable person could be expected to endure it." *Id.* at 195 (citing *K.B.*, 811 S.W.2d at 640).

Thus, Lewis has failed to adduce sufficient facts to support two of the required elements of an intentional infliction of emotional distress claim under Texas law—extreme conduct and severe distress. Therefore, summary judgment on this claim is warranted.

G. *Section 1983*

■ Although not addressed in his response to the summary judgment motion, in his complaint, Lewis also asserts a claim for deprivation of his constitutional rights under 42 U.S.C. § 1983, which creates a private right of action for redressing the violation of federal law by those acting under color of state law. *See Migra v. Board of Educ.*, 465 U.S. 75, 82, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir.1996), *cert. denied*, 521 U.S. 1112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir.1995). The statute provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.' " *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir.1985); *Carbonell v. Louisiana Dep't of Health & Human Resources*, 772 F.2d 185, 188 (5th Cir.1985).

■ To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *See Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir.1984). A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir.1986); *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985).

■ Thus, for Lewis to recover, he must show that Defendants deprived him of a right guaranteed by the Constitution or the laws of the United States. *See*

*Daniels,* 474 U.S. at 329–31, 106 S.Ct. 662; *Baker,* 443 U.S. at 139, 99 S.Ct. 2689; *Thomas v. Sams,* 734 F.2d 185, 190–91 (5th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Lewis must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence. *See Farmer v. Brennan,* 511 U.S. 825, 828–29, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels,* 474 U.S. at 328, 106 S.Ct. 662; *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The negligent deprivation of life, liberty, or property is not a constitutional violation. *See Campbell,* 43 F.3d at 977; *Fraire v. City of Arlington,* 957 F.2d 1268, 1276 (5th Cir.), *cert. denied,* 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); *Herrera v. Millsap,* 862 F.2d 1157, 1160 (5th Cir. 1989); *Simmons v. McElveen,* 846 F.2d 337, 339 (5th Cir.1988); *Young,* 775 F.2d at 1353. Moreover, to hold a defendant liable under § 1983, Lewis must adduce facts demonstrating the defendant's participation in the alleged wrong. *See Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir.1992); *Jacquez,* 801 F.2d at 793.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

> This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Due to the lack of state action, private persons generally may not be held liable under § 1983. *See Richardson v. Fleming,* 651 F.2d 366, 371 (5th Cir.1981).

 " '[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority.'" *Daniel v. Ferguson,* 839 F.2d 1124, 1130 (5th Cir. 1988) (quoting *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 388 (5th Cir.1985)); *see Brummett v. Camble,* 946 F.2d 1178, 1184 (5th Cir.1991), *cert. denied,* 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992). "Police reliance in making an arrest on information given by a private party does not make the private party a state actor." *Daniel,* 839 F.2d at 1130 (citing *Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.,* 673 F.2d 771, 772 (5th Cir.1982)). Likewise, the fact that a private party executed a sworn complaint which forms the basis for an arrest is not, in itself, sufficient to render the party a state actor. *See id.; see also Brummett,* 946 F.2d at 1184–85; *Sims v. Jefferson Downs Racing Ass'n,* 778 F.2d 1068, 1078–79 (5th Cir.1985). Instead, to be deemed a state actor, "[t]he plaintiff must show that the police in effecting the arrest acted in accordance with a 'preconceived plan' to arrest a person merely because he was designated for arrest by the private party, without independent investigation." *Id.* at 1079; *see Hernandez,* 673 F.2d at 772.

Here, Lewis has not shown, nor does he allege, that the HPD arrested him pursuant to a prior arrangement with Tisdel or Continental. The record is devoid of any evidence suggesting the existence of a preconceived plan between Continental and the HPD to arrest passengers at the be-

hest of Continental employees, such as Tisdel, without an independent investigation. Indeed, the evidence indicates that Tisdel neither suggested, directed, nor encouraged the HPD to arrest Lewis. In her deposition, Tisdel gave unrebutted testimony that she did not know that Lewis would be arrested and did not learn that charges were being brought against him until a much later time frame. She states in her affidavit that she did not "ask or intend that Mr. Lewis be arrested or prosecuted." Aside from calling security, pointing out Lewis to the officers when they arrived, and subsequently signing a statement recounting the events that had transpired, Tisdel played no role in Lewis's arrest. Lewis admits that he does not know what Tisdel initially told security and did not even see Tisdel converse with HPD officers. In his affidavit, Vaden confirms:

7. In deciding to charge Mr. Lewis, the Harris County District Attorneys' Office did not act at the instruction or direction of Ms. Tisdel or Continental Airlines.

8. Neither Ms. Tisdel nor Continental Airlines made or participated in the decision to arrest Mr. Lewis; that was solely the decision of the Houston Police Department.

9. Neither Ms. Tisdel not Continental Airlines participated in the decision to charge Mr. Lewis; that was solely the decision of the Harris County District Attorney's Office.

Thus, the record does not remotely suggest that Defendants were state actors so as to subject them to liability under § 1983. Consequently, Lewis cannot prevail against Tisdel and Continental on his federal constitutional claim, as the required element of state action is absent. Therefore, Lewis's § 1983 claim must be rejected.

III. *Conclusion*

Accordingly, Tisdel and Continental's Motion for Summary Judgment is GRANTED. Lewis has failed to present a claim that would entitle him to relief. There remain no material facts in dispute,

and Defendants are entitled to judgment as a matter of law.

IT IS SO ORDERED.