# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

No. 00-51223
(Summary Calendar)
_____

NIKELLE S. MEADE; ET AL.,

                                                          Plaintiffs,

NIKELLE S. MEADE,

                                                          Plaintiff-Appellant,

versus

DILLARD DEPARTMENT STORES, INC.; ET AL,

                                                          Defendants,

DILLARD DEPARTMENT STORES, INC.; SIMON
PROPERTY GROUP (TEXAS); DILLARD TEXAS
OPERATING LIMITED PARTNERSHIP,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
A-98-CV-714-AA
_____

October 4, 2001

Before JOLLY, STEWART, and PARKER Circuit Judges.

PER CURIAM:[*]

---

[*]Pursuant to Cɪʀ. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstance set forth in 5ᵗʰ Cɪʀ. R. 47.5.4.

Plaintiff-Appellant, Nikelle S. Meade, appeals the district court's dismissal of her claims against Defendants-Appellees, Dillard Department Stores, Dillard Operating Limited Partnership, and Simon Property Group (Texas). For the reasons assigned below, we affirm.

FACTUAL HISTORY AND BACKGROUND

Nikelle S. Meade ("Meade"), an African-American woman, sued Dillard Department Stores, Inc., Dillard Texas Operating Limited Partnership (collectively "Dillard's"), and Simon Property Group (Texas) ("Simon") for violations of 42 U.S.C. §§ 1981, 1982 and 1983, intentional infliction of emotional distress, false imprisonment, slander by acts, and assault.[1] Meade's § 1983 cause of action alleges that she was subject to an unreasonable search and seizure and deprived of equal protection of the law.

## I.      Alleged Incidents of Wrongful Detention

Simon owns and operates the Lakeline Mall in Austin, Texas where the events giving rise to Meade's suit took place. Meade visited the Dillard's Department Store in Lakeline Mall. As she browsed the merchandise, Meade was approached by Mike Ratliff ("Ratliff"), a Lakeline mall security guard, within view of James Walker ("Walker"), who was a Dillard's security guard and a Cedar Park Police Officer.[2] Ratliff demanded to see Meade's purse and bag on the grounds that a Dooney and Bourke brand purse had been stolen. The purse carried by Meade was not of the type alleged to have been stolen.

---

[1] Meade had also asserted claims against Simon Property Group (Delaware), Inc., however; the claims where dismissed for lack of subject matter jurisdiction.

[2] The mall security guards are employees of Simon, while the Dillard's security guard is employed by Dillard's.

Meade objected to the search but Ratliff insisted, stating that he had to check her purse because he was told that a black women had stolen a purse. Ratliff then grabbed Meade's arm and pulled her to the center escalator lobby and demanded to see Meade's identification. Meade produced a receipt for merchandise, her driver's license, some credit cards, her checkbook, and a student identification card. After checking the items, Ratliff released Meade's arm and apologized.

After being released, Meade confronted Walker, who was standing nearby, concerning the incident. Walker merely shrugged and stated that he had nothing to do with it. After searching in vain for Ratliff, Meade returned to Walker, demanding a description of the black women who allegedly stole a purse. Walker then stated that she "better not mess" with him or else she would be arrested. Meade testified that at no time did Walker touch her.

Shortly after Meade's conversation with Walker, Ratliff reappeared accompanied by a fellow Lakeline mall security guard. Ratliff stated that some employees in the Dillard's Woman's Department had identified Meade as the person who used a credit card that was in the stolen purse. Ratliff told Meade that she had to accompany them so that the employees could identify her. During the course of this second encounter, Meade was brought in close proximity to Walker, but he did not say anything.

Meade initially refused to accompany the Lakeline mall security guards. Ratliff told Meade that she must follow them or else he would arrest her. Meade then complied and Ratliff grabbed her arm and led her through the mall. Meade was then taken to a room apparently containing the Dillard's' employees, who could not identify her. Meade was cleared by the employees. However, Meade was still not released, as it was claimed that the same credit card was used at another mall store. Meade was then led to another mall establishment, The County Seat, where she was again

3

cleared by a clerk. Thereafter, Meade was released into the wrong level of an empty parking lot a half hour after the closing of the mall.

**II.     Procedure Below**

Dillard's filed a FED. R. CIV. P. 12(b)(6) motion seeking a dismissal of Meade's § 1983 claim against Dillard's, as well as Meade's intentional infliction of emotional distress claim. The district court granted Dillard's motion on both claims. Meade then filed a motion for reconsideration of the dismissal of the § 1983 claim against Dillard's, which the district court denied.

The district court granted summary judgment for Dillard's and Simon with respect to the claims under §§ 1981 and 1982 and the state law claims of intentional infliction of emotional distress and slander by acts. Further, the district court granted summary judgment for Dillard's on Meade's false imprisonment and assault claim. The district court also granted summary judgment for Simon on Meade's § 1983 claim. However, the district court denied Simon's motion for summary judgment on the false imprisonment claim.

Meade's claims of false imprisonment and assault against Simon proceeded to a jury trial before a magistrate judge. The jury returned a verdict for Simon on both claims. Meade then filed a motion for new trial. Meade's motion for new trial was denied and she filed a timely appeal. Meade appeals only the following: (1) the order granting Dillard's FED. R. CIV. P. 12(b)(6) motion to dismiss her § 1983 claim, (2) the grant of summary judgment in favor of Simon on Meade's § 1983 claim, (3) the grant of summary judgment in favor of Dillard's on her false imprisonment claim, and (4) the denial of Meade's motion for reconsideration of her § 1983 claim against Dillard.

DISCUSSION

4

A.      Standard of Review

This court reviews a district court's ruling on a FED. R. CIV. P. 12(b)(6) motion de novo. Jackson v. City of Beaumont Police Dep't, 958 F.2d 616, 618 (5th Cir. 1992). In reviewing the dismissal of a claim under FED. R. CIV. P. 12(b)(6), this court must accept all of the plaintiff's factual allegations as true. Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995). "The motion may be granted only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." Jackson, 958 F.2d at 618 (quotations and citations omitted). "[D]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn, 42 F.3d at 931 (citation omitted).

This court reviews a district court's grant of summary judgment de novo. Melton v. Teachers Ins. & Annuity Ass'n of Am., 114 F.3d 557, 559 (5th Cir. 1997). Summary judgment is proper where the pleadings and summary judgment evidence present no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A factual dispute will preclude an award of summary judgment if the evidence is such that a reason jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

B.      Meade's Section 1983 Claim Against Dillard's

Meade alleges that Dillard's violated her rights under 42 U.S.C. § 1983, which creates a cause of action against those who, under the color of law, subject others to deprivations of certain rights, privileges, or immunities secured by either the Constitution or the laws of the United States. To assert a claim under § 1983, Meade must show (1) that she was deprived of a right "secured by the Constitution and the laws" of the United States and (2) that the conduct complained of was

committed by a person acting under the color of law. Flagg Bros. v. Brooks, 436 U.S. 149, 155-56 (1978); Daniel v. Ferguson, 839 F.2d 1124, 1129 (5th Cir. 1988).

In this action, Meade attempts to establish that Dillard's acted under the color of state law based on the actions of Walker, who, during the incident in question, was an off-duty police officer hired by Dillard's as a security guard. Although private entities are not generally considered state actors, it is "without doubt that the actions of a private citizen can, and in some circumstances do, become the actions of the state . . . for purposes of § 1983." Hall v. Garson, 430 F.2d 430, 439 (5th Cir. 1970). In Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970), the Supreme Court held:

> Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [1983]. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

Id. at 152.

The district court found that Meade had sufficiently alleged deprivation of constitutional rights under the Fourth and Fourteenth Amendments. However, the district court stated that Meade failed to met the second prong for asserting a § 1983 claim that Dillard's was acting under the color of law. Meade has alleged facts that could support a finding that Walker, a Dillard's employee, acted under the color of state law. The relevant allegations are that Walker wore an official police uniform and threatened to arrest Meade when she complained about her encounter with Ratliff. Similar facts have been found to be sufficient to support a finding that there was state action under color of law. See Griffin v. Maryland, 378 U.S. 130, 135 (1964) (state action where amusement park security guard wore a deputy sheriff badge and arrested patrons who failed to leave the park in response to his order). However, under Adickes, in order for Meade to state a § 1983 claim against Dillard's, a

6

private entity, Meade must show that Dillard's jointly participated in prohibited acts along with Walker.

Meade has not asserted that there is a "customary plan" between Dillard's and Walker (or the police generally) that resulted in a deprivation of Meade's rights. See Smith v. Brookshire Bros., Inc., 519 F.2d 93, 94 (5th Cir. 1975). Other than the implied allegation that there was an employment relationship between Dillard's and Walker, which is by itself insufficient to state a § 1983 claim against an employer,[3] Meade does not allege any connection between Dillard's and Walker that even suggests joint action. Therefore, Meade fails to make the requisite allegation for asserting a § 1983 claim against Dillard's.

Meade relies heavily on Laughlin v. Olszewski, 102 F.3d 190 (5th Cir. 1996). In Laughlin, this court affirmed the principle that an off-duty police officer may act under the color of state law for § 1983 purposes. However, unlike this case, Laughlin involved a suit directly against the police and the municipality. Laughlin does not relieve Meade from pleading that Dillard's jointly engaged with the state officials in violating Meade's constitutional rights. Accordingly, Meade has failed to demonstrate that Dillard's acted under the color of state law for § 1983 purposes, and the district court did not erroneously dismiss her claim.

C.    Meade's Section 1983 Claim Against Simon

Meade argues on appeal, as she did in the district court, that there is evidence of joint action, or "collusion" between Ratliff, a Simon's employee, and Walker, who Meade contends was acting under the color of state law when the incident occurred. Meade asserts that Ratliff willfully

---

[3]A municipality cannot have § 1983 liability based on the doctrine of respondeat superior. Monell v. Department of Social Serv., 436 U.S. 658, 691 (1978). Further, "[e]very circuit court to consider the issue has extended the holding to private corporations as well." Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992) (collecting cases).

7

participated with Walker in a typical police action in a department store, searching for stolen merchandise and trying to investigate and apprehend a theft suspect. Therefore, Meade concludes that Simon and Dillard's were acting under the color of law for purposes of § 1983.

The district court did not elaborate in its ruling denying Meade's claim. Further, no cases in the Fifth Circuit or the Supreme Court have found that a private party was acting under the color of state law in the circumstances alleged by Meade. Simon argues that this court's holding in White v. Scrivner Corp., 594 F.2d 140, 142-45 (5th Cir. 1979), is controlling in the case at bar.

In White, this court stated that the function of a private entity could be attributed to the state only when the function is exclusively reserved to the state. Id. at 142. This court held that "a merchant's detention of persons suspected of stealing store property simply is not an action exclusively associated with the state," and a subsequent search of a suspect was merely an extension of the detention for shoplifting. Id. at 142-43. This court concluded that such actions are not to be considered to be taken under color of law for § 1983 purposes. Id. at 144.

However, White did not involve a circumstance in which a private party relies on a police officer's official authority to deprive another of constitutional rights, as the case at bar does. In fact, this court has distinguished White on this very basis. In Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 388 & n.5 (5th Cir. 1985), this court reversed a FED. R. CIV. P. 12(b)(6) dismissal of a § 1983 claim where the allegations would permit a finding that a private party has participated in joint action with an agent of the state. Thus, White does not apply to this case.

The joint action required to impose § 1983 liability on a private actor requires a "substantial degree of cooperative action" between the private actor and government officials. Collin v. Womanacre, 878 F.2d 1145, 1154 (9th Cir. 1989). Walker's alleged discussions with Ratliff and his

8

consent to stand nearby while Ratliff investigated Meade were insufficient to constitute substantial interaction for § 1983 purposes.

D.      Meade's False Imprisonment Claim Against Dillard's.

Under Texas law, false imprisonment is the "direct restraint by one person of the physical liberty of another, without adequate legal justification" and without the person's consent. Such restrain may "be effected by violence, or by threats or by any other means, which restrains a person from moving from one place to another." Reicheneder v. Skaggs Drug Ctr., 421 F.2d 307, 310 (5th Cir. 1970). "Liability for false imprisonment extends to anyone who directs, requests, or participates in a detention." Smith v. Sneed, 938 S.W.2d 181, 185 (Tex. App. 1997).

Meade argues that she was illegally restrained by Ratliff and Walker, who were acting in concert. Further, she contends that her second illegal detention was a direct result of false reports from Dillard's' employees. Regarding the first detention, the district court stated that Walker did nothing more then stand within five feet of Meade while she was being investigated by Ratliff and did not join in the detention. Accordingly, the district court found that Dillard's was entitled to summary judgment on Meade's false imprisonment claim.

It is undisputed that Dillard's did not play a primary role in the detention of Meade. However, in opposition to the summary judgment motion, Meade presented the affidavit of Calvin E. Lee ("Lee"), an expert witness. Lee stated that because Walker was in full police uniform and was standing in close proximity to Meade while Ratliff questioned her and examined her purse, Walker was involved in the incident by virtue of his "commanding presence." Texas jurisprudence does not provide clear guidance as to whether substantial, active participation is required to bring about liability for false imprisonment, or whether minimal, passive participation is sufficient. Nonetheless,

9

this court need not reach this issue because the "[m]ere conclusory allegations" of Meade's expert witness "are not competent summary judgment evidence, and . . . are therefore insufficient to defeat or support a motion for summary judgment." Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). Accordingly, the district court did not err in finding that Dillard's is not liable for false imprisonment because it did not directly participate in Meade's detention.

Further, the district court also rejected Meade's assertion that she had been identified by Dillard's employees, making Dillard's liable for the alleged subsequent false imprisonment. The district court found that an employee who merely reports an alleged crime, and identifies the offender, is not liable for any subsequent false imprisonment. Lewis v. Continental Airlines, Inc., 80 F. Supp. 2d 686, 702 (S.D. Tex. 1999).

The district court properly found that there was no evidence that the Dillard's employees directed or requested that Meade be arrested. Thus, although the Dillard's employees may have identified Meade as the perpetrator of the offense, this could not defeat summary judgment because an inference that the employees directed the detention would be based on speculation. Accordingly, the district court did not err in finding that Dillard's played no part in either of the alleged unlawful detentions of Meade.

E.     Denial of Meade's Motion for Reconsideration.

Meade filed a notice of appeal from the district court's denial of her Motion for Reconsideration. However, Meade did not discuss this issue in the body of her brief. Likewise, her notice of appeal encompasses the grant of summary judgment for Dillard's on her assault claim, however; Meade does not discuss the assault claim in her brief. Therefore, Meade has waived these issues on appeal. Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993).

10

## CONCLUSION

Accordingly, we AFFIRM the district court's dismissal of Meade's claims against Dillard's and Simon for violations of § 1983 and false imprisonment.

AFFIRMED